FIDELITY INSURANCE, TRUST & SAFE-DEPOSIT CO. v. NORFOLK & W. R. CO.

(Circuit Court, W. D. Virginia. July 2, 1898.)

1. RAILROAD RECEIVERS—FORECLOSURE—TRANSFER TO PURCHASER—LIABILITY FOR NEGLIGENCE.
    A foreclosure decree provided that the purchasers should be let into possession on the execution and delivery of deeds by the special masters making the sale, and that they should take the property subject to all liabilities incurred by the receivers, which liabilities should be determined and enforced by the court ordering the sale. The receivers in fact remained in possession for six days after delivery of the deeds, during which period a liability arose for negligent operation of the road. *Held*, that the delivery of the deeds did not, in law, effect an immediate transfer of possession, so as to make the purchasers directly responsible for such negligence, nor could the receivers be considered as operating the road as their agents, but that such liability was one arising during the receivership, which could only be enforced by the federal court under the terms of the decree.
2. JURISDICTION OF FEDERAL COURT—ENJOINING PROCEEDINGS IN STATE COURT.
    Where a federal court by its decree of sale retains jurisdiction of a foreclosure proceeding so far as to determine and enforce, against the property sold, claims for liability incurred by the receivers, it may enjoin the prosecution of an action on such a claim in a state court without violating Rev. St. § 720, which inhibits granting an injunction to stay proceedings in a state court.

Sipe & Harris and E. M. Pendleton, for petitioner.

William A. Anderson and C. B. Guyer, for respondent.

PAUL, District Judge. In this cause the petitioner, the Norfolk & Western Railway Company, heretofore filed its petition praying for an injunction against Baxter Lilly, to restrain said Lilly from prosecuting an action at law instituted by him against said petitioner in the corporation court of the city of Buena Vista, Va., to recover damages for injury to his property alleged to have occurred by reason of the negligence of said railway company, by permitting a certain water course to be dammed and impeded by the embankment and roadbed of said railway company, and by not having an adequate outlet for such water course. A temporary restraining order was granted by this court, enjoining said Lilly from further proceeding with his suit in the state court. The defendant Lilly demurs to the petition on the following grounds:

"(1) That, by the terms of the decree confirming the sale, the receivership, and the possession of the receivers as the representatives of this court, terminated with the making and delivery of the deed unreservedly conveying the entire property of the Norfolk & Western Railroad Company to the Norfolk & Western Railway Company, thereby constituting the latter company the absolute owner of said property. (2) That from the instant of the delivery of said deed the title and control of the property was, as a question of law and of fact, vested absolutely in the grantee, and the jurisdiction of this court in the suit for which the sale was made finally at an end in respect to the control of the property conveyed, and as to all transactions and rights arising in respect to that property. (3) That it does not appear from the record that this court intended to extend its jurisdiction, or to retain the control and custody of the property sold and conveyed, beyond the moment of the conveyance consummated. On the contrary, the decree expressly limits the possession of the receivers, as such, until the conveyance to the purchaser, his successors or assigns, in the following explicit language: 'Until the conveyance to the purchaser, his successor or assigns, of the mortgaged premises, railroad property, and franchises sold under this decree, the receivers shall continue in possession thereof, and to discharge the duties imposed upon them by the order of their appointment, with the rights and powers thereby conferred.' (4) That the receivers had no right or power under said decree to retain possession and control of said property for a moment after the completion of the conveyance. If they did so, it was as the agents and representatives of the purchaser, and not of the court. It was merely for the convenience of the purchaser that the formal transfer of the possession was postponed till September 30, 1896. In contemplation of law, the real transfer of the possession took place instanter with the delivery of the deed to the purchaser. In such case, 'possession follows the title.' If it was in the power of the receivers to prolong the receivership and extend their control and custody of the property for six days, it was in their power to do this for six months, or any longer period. They could only retain the possession at all after the conveyance with the consent of the purchaser, and as his agent in law and in fact. Their possession after September 24, 1896, was the possession of the Norfolk & Western Railway Company. (5) This court did not by its decree of confirmation undertake to prolong its control and custody of the property sold beyond the consummation of the sale and transfer of the railroad property by the completion of the conveyance, and, if its decree could bear such construction, it would be, in such particular, erroneous and inoperative. (6) To place such a construction upon the decree would be to render nugatory the provisions of the constitution and laws of the United States which give to the state courts exclusive original jurisdiction of all suits between citizens of the same state, by undertaking to compel a citizen of Virginia, who has a cause of action against the Norfolk & Western Railway Company, to assert

his demand in the federal court. (7) The prayer of the petition is in contravention of the inhibition of the judiciary act of 1793 (Rev. St. U. S. § 720): 'The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state except where such injunction may be authorized by any law relating to proceedings in bankruptcy.' The allegation of the petitioner that the demurrant has sued the wrong party,—that his suit should have been brought against the receivers, and not against the petitioner—is no answer to this. If true, that would be an ample defense to the suit in the state court. But it cannot be availed of by this collateral proceeding, by invoking the writ of injunction from this court, without violating the explicit prohibition of the act of 1793. That defense, in a suit like the one enjoined, between two citizens of Virginia, can only be rightfully and properly asserted by way of direct defense to that suit in the Virginia forum. (8) The fact that this court retained jurisdiction of the case for the purpose of enforcing the terms of the decree of sale for the benefit of any claimants against the receivers does not justify the extension of that jurisdiction to a party who is asserting no claim against the receivers, who is not claiming the benefit of the lien retained under the terms of sale, but who is suing the Norfolk & Western Railway Company upon a cause of action which has arisen between these two parties after said railway company had become the actual and the only responsible owner of the property."

The petition shows the following state of facts:

In February, 1895, receivers were appointed of the Norfolk & Western Railroad Company in a foreclosure suit brought by the Fidelity Insurance, Trust & Safe-Deposit Company. A decree of sale of the railroad property was entered on the 26th day of June, 1896; and on the 16th day of September, 1896, a deed conveying the same to the Norfolk & Western Railway Company (which will hereafter be styled the "Railway Company") was executed and delivered, and the Railway Company took possession thereof at midnight on the 30th day of September, 1896. The injury of which Lilly complains, and for which he brings in the state court his suit for damages, occurred on the 29th day of September, 1896. The decree of sale contained a provision, very common in decrees of sale of railroad property, as to the payment of existing liabilities against the receivers. It is as follows:

"The purchaser shall, as part consideration for the railroad property and franchises purchased, take the same and receive the deed therefor upon the express condition that, to the extent that the assets or proceeds of assets in the receivers' hands not subject to any other lien or charge shall be insufficient, such purchaser, his successors or assigns, shall pay, satisfy, and discharge (a) any unpaid compensation which shall be allowed by the court to the receivers; (b) any indebtedness and obligations or liabilities which have been contracted or incurred by the receivers, before delivery of possession of the property sold, in the management, operation, use, or preservation thereof. * * *"

The decree further provides:

"The purchaser of such railroad property and franchise shall also take the same subject to the performance by him or his successors or assigns of all pending contracts in respect thereof theretofore lawfully made by the receivers. In the event that the purchaser of said railroad property and franchises, his successors or assigns, after demand made, shall refuse to pay any of the before-mentioned indebtedness or liabilities, the person holding the claim therefor, upon fifteen days' notice to such purchaser and his successors and assigns, may file his petition in this court to have such claim enforced against the property sold, in accordance with the usual practice of the court in relation to claims of similar character; and such purchaser and his successors and assigns shall have the right to appear and make defense to any

claim, debt, or demand so sought to be enforced, and any party shall have the right to appeal from any judgment, decree, or order made therein. For the purpose of enforcing the foregoing provisions of the decree, jurisdiction of this cause is retained by this court; and the court retains the right to retake and resell said property in case such purchaser or his successors or assigns shall fail to comply with any order of the court in respect to the payment of such prior indebtedness or liabilities within thirty days after service of a copy of such order."

The decree provides for the publication of notice in the newspapers of certain towns, calling upon the holders of any such claims as are directed to be paid to present the same for allowance or payment; those not presented within six months after first publication of such notice to be disallowed. In the decree it was further ordered:

"Upon payment of the purchase price bid by the purchaser or purchasers, or upon making such provision as the court shall approve for the payment thereof, the said special masters shall execute proper deed or deeds conveying and assigning the property purchased to such purchaser, or his successors or assigns; and upon the execution and delivery of such deed or deeds the grantee therein shall be let into possession of the premises conveyed, and the receivers shall deliver any of the premises sold which may be in their possession over to the purchaser, his successors or assigns, together with any property and net income acquired or received by the receivers since the commencement of this suit, and up to the date of such delivery of possession, in the management or operation of the mortgaged premises embraced in such conveyance, subject nevertheless to the condition that the court may retake and resell all or any of said property in case the purchaser thereof, his successors or assigns, respectively, shall fail to pay any balance of the purchase price remaining unpaid by him or them, or to comply with any order of this court with respect to the payment of the prior indebtedness, obligations, and liabilities as hereinbefore provided, within thirty days after the service of copy of such order. Until the conveyance to the purchaser, his successors or assigns, of the mortgaged premises, railroad property, and franchises sold under this decree, the receivers shall continue in possession thereof, and to discharge the duties imposed upon them by the order of their appointment, with the rights and powers thereby conferred. They will keep a correct account of the earnings and income of the premises accruing after the date of sale; and, if the same should be confirmed, the purchaser, on delivery of possession by the receivers, will, as hereinafter provided, be entitled to receive the net income and earnings accruing subsequent to the date of sale, and the proceeds of such income and earnings. The purchaser of the said railroad property and franchises, and his successors and assigns, respectively, after such delivery of the premises. shall hold, possess, and enjoy the same, and all the rights, privileges, immunities, and franchises appertaining thereto, as fully and completely as said Norfolk & Western Railroad Company now holds and enjoys the same, or held and enjoyed or was entitled to hold and enjoy the same at the time of the execution of the said mortgage, or at any time since; and the purchaser and his successors and assigns, respectively, shall thereupon be entitled to have and hold the premises so conveyed free and discharged from the lien and incumbrance of said mortgage, and from the claims of all other parties to this suit, and those claiming under them, save only as hereafter shall be adjudged to be prior in lien or superior in equity to said mortgage, and which, as hereinbefore provided, the purchaser may be required to pay in addition to the purchase price bid."

The contention of the petitioner, the Railway Company, is that the claim of Lilly is one arising under this provision of the decree of sale, to wit: "The purchaser shall, as part consideration for the railroad property and franchises purchased, * * * pay, satisfy, and discharge * * * (b) any indebtedness and obligations or liabilities which shall have been contracted or incurred by the re-

ceivers before delivery of possession of the property sold, in the management, operation, use, or preservation thereof." It is claimed that, notwithstanding the property was sold on the 16th of September, 1896, the sale confirmed, the deed of conveyance executed and delivered to the purchaser on the 24th of September, 1896, and although the injury complained of by Lilly occurred on the 29th of September, 1896, yet this is an obligation or liability incurred by the receivers, and is part of the consideration which the purchasers agreed to pay for the railroad property and franchises. The railway company insists that this liability must be ascertained and determined in this court. The ground on which this contention rests is the fact that though the deed was executed and delivered to the purchaser on the 24th of September, 1896, the receivers did not deliver possession of the property to the Railway Company until midnight on the 30th day of September, 1896. The defendant insists that the delivery of the deed of conveyance on the 24th of September, 1896, carried with it, and vested in the Norfolk & Western Railway Company, the possession and control of said railroad, and that the damage complained of having occurred subsequent to the execution and delivery of the deed to the purchaser, the Railway Company, that company is liable for the damages claimed. The defendant urges that it was clearly in contemplation of the court to limit the time in which possession and control of the property should rest in the receivers to the time of the execution and delivery of the bond; that this is shown by the following provisions in the deed of sale:

"Upon the execution and delivery of such deed or deeds, the grantee therein shall be let into the possession of the premises conveyed, and the receivers shall deliver any of the premises sold which may be in their possession over to the purchaser, his successors or assigns, together with any property and net income acquired or received by them since the commencement of this suit, and up to the date of such delivery of possession, in the management or operation of the mortgaged premises embraced in such conveyance. ❋ ＊ ❋ Until the conveyance to the purchaser, his successors or assigns, of the mortgaged premises, railroad property, and franchises sold under this decree, the receivers shall continue in possession thereof, and to discharge the duties imposed upon them by the order of their appointment, with the rights and powers thereby conferred."

Taken in connection with other provisions of the decree, these extracts do not, in the opinion of the court, invest the purchaser with possession of the railroad property, in such sense as to make it responsible for acts of negligence occurring before it has assumed control and management of the property. Actual possession and control of the management of a railroad are so essentially necessary to fix responsibility for negligent conduct in its operation that these conditions cannot be met by the execution and delivery of a deed of conveyance to the purchaser of railroad property. The possession conferred by such a conveyance is not such possession as was contemplated by the decree of sale in this cause. Such a deed doubtless gives a right of possession of the railroad property to the grantee, but it was actual, controlling possession that was intended by the court should be given to the purchaser before his responsibil-

ity for its negligent management attached, and that of the receivers ended. To have invested the purchaser of an extensive railroad system with immediate possession on the execution of the deed of conveyance would have been, in the very nature of the transaction, impracticable. In making the change from the control and management of the receivers to that of the officials of the purchasing railroad company required time, method, and orderly procedure, to the end that the public service might be conserved without derangement of the mails, passenger and freight trains, and the disorganization of the management and labor necessarily employed in the various departments of the railroad business. There was not an unusual or an avoidable delay in the delivery of possession by the receivers; and, if there had been, the court is at a loss to see how a failure on the part of the receivers to promptly perform their duty could fix any responsibility on the railway company. It took possession when delivered to it by the receivers, and its responsibility for acts of negligence, of commission or omission, began then.

The contention of counsel for Lilly, that, during the interim of six days between the execution and delivery of the deed of conveyance and the delivery of possession of the railroad property, the receivers were the agents of the Railway Company, and not acting in their official capacity as receivers, cannot be maintained. There is nothing in the conduct of the parties, or in the facts of the case, to establish either an express, or an implied agency.

The claim sought to be established in the state court against the Railway Company is a liability accruing during the time the receivers were in control and possession of the railroad, and must be established in the manner prescribed by the decree. The court did not surrender its jurisdiction over this class of claims, nor did its jurisdiction end with the execution and delivery of the deed of conveyance. It specifically provided in the decree of sale what liabilities the purchaser of the railroad property should assume as part of the purchase price therefor, and how such liabilities should be ascertained. These provisions of the decree entered into, and became a part of, the contract of purchase. The Railway Company by its purchase became a party to this suit. It is bound by the terms of the decree of sale, and it has a right to have them enforced in its behalf. In enforcing the provisions of this decree, and protecting its own jurisdiction, the court does not, as contended in the second substantial ground of demurrer, violate the provision of section 720 of Revised Statutes of the United States, which inhibits the granting of an injunction to stay proceedings in a state court. The court, in granting an injunction to prevent Lilly from proceeding in the state court to establish a claim of which this court has jurisdiction, and so had when the suit in the state court was commenced, is, in no wise invading the already acquired jurisdiction of the state court. This court is only endeavoring to protect its own jurisdiction, and to enforce its own decrees. Without this, its efficiency would not only be seriously impaired, but its authority, in many cases, rendered nugatory. In Dietzsch v. Huidekoper, 103 U. S. 494, the supreme court says:

"A court of the United States is not prevented from enforcing its own judgments by the statute which forbids it to grant an injunction to stay proceedings in a state court."

The doctrine here announced has been followed by numerous decisions in the federal courts. Railroad Co. v. Scott, 13 Fed. 793; Jesup v. Railway Co., 44 Fed. 663; Central Trust Co. v. St. Louis, A. & T. Ry. Co., 59 Fed. 385; Lanning v. Osborne, 79 Fed. 657; Terre Haute & I. R. Co. v. Peoria & P. U. R. Co., 82 Fed. 943.

After a careful examination of the cases cited by counsel for the defendant, the court fails to find that they contravene in any respect the doctrine sustained by the authorities just cited. The demurrer will be overruled.