LANG et al. v. CHOCTAW, OKLAHOMA & GULF R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 3, 1908.)

No. 2,536.

1. COURTS—CONFLICT OF JURISDICTION—COURT WHICH FIRST ACQUIRES CUSTODY EXCLUDES JURISDICTION OF OTHERS.

The lawful custody of specific property by a court of competent jurisdiction withdraws that property, so far as necessary to accomplish the purpose of that custody and until that purpose is accomplished, from the jurisdiction of every other court.

The court which first acquires the lawful jurisdiction of specific property by the seizure thereof, or by the due commencement of a suit, from which it appears that it is, or will become, necessary to a determination of the controversy involved or to the enforcement of its judgment or decree therein for the court to seize, to charge with a lien, to sell, or to exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court so far as necessary to accomplish the purpose of the suit, and entitles that court to retain the control of it requisite to effectuate its final judgment or decree therein free from the interference of every other tribunal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1386–1398.

Jurisdiction as dependent on possession of the subject-matter, see note to Adams v. Mercantile Trust Co., 15 C. C. A. 8.]

2. SAME—JURISDICTION INCLUDES POWER TO PROTECT AND ENFORCE DECREES AND TITLES THEREUNDER.

The jurisdiction of specific property once lawfully acquired by a court by reducing it to its lawful custody in a suit or other proceeding before it includes the power to protect and effectuate its decrees or judgments therein and the titles of purchasers and others thereunder against attempts to annul or impair them by proceedings in other courts or elsewhere, and a court may lawfully retain jurisdiction after its surrender of its possession of the property for that purpose.

[Ed. Note.—Supplementary and ancillary proceedings and relief in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.]

**3.** Same—Injunction—National Court may Enjoin Proceedings in State Courts Instituted to Impair its Jurisdiction.

Where a national court is acting to enforce or protect its lawful decrees, or the titles thereunder, it may notwithstanding section 720, Rev. St. (U. S. Comp. St. 1901, p. 581), restrain all suits and proceedings in state courts which would have the effect to defeat or impair its jurisdiction.

[Ed. Note.—Federal courts restraining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

**4.** Equity—Practice—Dependent Bill will Lie to Enforce or Protect Former Decrees and Titles Thereunder.

A dependent bill or a supplemental bill in the original suit will lie,
(1) to aid, enjoin or regulate the original suit,
(2) to restrain, avoid, explain, or enforce the judgment or decree therein, or,
(3) to enforce, to enjoin the enforcement of, or to obtain an adjudication of liens upon or claims to property to which the court acquired jurisdiction in the original suit.

**5.** Courts—Jurisdiction and Custody—Notice of Purpose to Acquire Requisite.

Neither jurisdiction nor custody of specific property can be conferred upon a court or acquired by it by the commencement and prosecution of a suit which contains no notice, either in the pleadings or other proceedings therein, of any purpose to affect such property thereby.

Nor do purchasers of such property pendente lite who are not parties to such a suit take it subject to subsequent judgments or decrees therein that attempt to affect it.

**6.** Same—Facts—Conclusions.

The Gulf Company was the grantee of the purchaser in 1898 of a railroad from Little Rock to Hopefield, under a decree of foreclosure sale made by the federal court in 1894, by which the purchaser was required to pay such claims filed in that court and such only as that court should adjudge prior in lien to the mortgage foreclosed which was made in 1887, and in which decree the court reserved to itself the right to retake and resell the property to satisfy such claims if the purchaser failed to discharge them. That suit in foreclosure was commenced in 1893, and the federal court then took possession of the railroad by its receivers, and held and operated it until it delivered it to the purchaser under the decree after the sale in 1898. In 1872 the defendants owned interests in 90 acres of land on the bank of the Mississippi river at Hopefield opposite Memphis, which the predecessors in title of the mortgagor had for some time prior to 1887 used for railway purposes without making compensation therefor, but all of which except 1⅛ acres caved into the Mississippi river prior to 1902. In 1880 the defendants brought a suit in a state court in Arkansas against one of the predecessors in title of the mortgagor to recover compensation for the taking of that land, and to enjoin that predecessor from the use of it until such compensation was made, and in 1902 they recovered a judgment in that suit against the predecessor for $17,956.33 and some interest. After they recovered this judgment they exhibited a dependent bill in the state court against the Gulf Company to obtain a decree therein that their judgment was secured by a lien upon the entire railroad superior to its title and to the lien of the foreclosed mortgage, and the federal court upon a supplemental bill filed in the foreclosure suit enjoined them from proceeding with their dependent suit. The defendants had filed their claim in the foreclosure suit in the form of an intervening petition in 1895 and had prayed that court for a decree that they were secured by a lien superior to that of the mortgage, and that their lien should be paid out of the property or out of its proceeds in preference to that of the mortgage.

*Held* (1) the state court acquired no jurisdiction or custody of any part of the railroad or its appurtenances, except the 90 acres, by the

suit of 1880, and it surrendered its jurisdiction over those 90 acres when it entered its decree in 1902.

(2) The federal court acquired exclusive jurisdiction and custody of the railroad by the commencement of the foreclosure suit and its seizure by its receivers.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1386–1398.]

(3) The defendants by their intervening petition became parties to the foreclosure suit and filed their claim therein before the foreclosure sale.

(4) The federal court reserved to itself by its decree exclusive jurisdiction to determine what claims filed in that case were prior in lien to the mortgage and should be paid by the purchaser.

(5) The dependent suit brought by the defendants against the Gulf Company in the state court to enforce their claim of a lien superior to its title and to the lien of the mortgage was an attempt to avoid the decree of foreclosure and the title thereunder and to impair the jurisdiction of the federal court, and the power was conferred and the duty imposed upon it to enjoin the prosecution of that suit.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

This is an appeal from an order which granted a temporary injunction against the prosecution by certain judgment creditors of a suit in the chancery court of Crittenden county, in the state of Arkansas, to subject a railroad and its appurtenances, which were owned by the complainant, the Choctaw, Oklahoma & Gulf Railroad Company, under a decree of foreclosure rendered by the United States Circuit Court for the District of Arkansas, to a lien alleged to be paramount to the mortgage foreclosed and to satisfy their judgment, which had been rendered after the foreclosure against the predecessor in title of the mortgagor, by a sale of the railroad. Neither the mortgagor, the mortgagee, nor the Gulf Company were parties to the action which resulted in that judgment.

The chief subject of this controversy is the railroad from Little Rock, in the state of Arkansas, to Hopefield, upon the west bank of the Mississippi river opposite Memphis. In 1887, the Little Rock & Memphis Railroad Company, hereinafter called the Little Rock Company, succeeded to the title to this railroad of the Little Rock & Memphis Railroad Company as reorganized, and mortgaged the railroad and its appurtenances to secure its bonds to the amount of $3,186,000. The reorganized company, and its predecessor in title, had at various times between 1872 and 1887 appropriated to the use of its railroad without compensation about 90 acres of land on the west bank of the Mississippi river at Hopefield, to undivided interests in which the defendants had title. This land was used for a time by these predecessors, and it then caved into the river and disappeared so that little of it is, or ever has been, in the possession or use of the Gulf Company. In 1880 the defendants commenced a suit in the circuit court of Crittenden county against the old reorganized company, in which they prayed that the amount due them for the use of this land and for the removal of earth and timber therefrom by that company and by its predecessor in title might be ascertained and paid, and that the reorganized company might be enjoined from using this land until this amount was paid. There was no claim to or prayer for any lien upon the railroad in the bill in that suit, or in the amended bill therein, which was subsequently filed. The final decree in that suit was rendered on February 27, 1902, and it was that the defendants should recover from the reorganized company $17,956.36, and interest from September 23, 1901, and costs, and it granted no other relief. Between the commencement of that suit in 1880 and the final judgment in 1902, it had been dismissed, and its dismissal had been reversed (Organ v. Memphis & Little Rock R. R. Co., 51 Ark. 235, 11 S. W. 96); a judgment had been recovered against the reorganized company by the defendants for $13,868.80, and that judgment had been reversed (Memphis & Little Rock Railroad Company v. Organ, 67 Ark. 84, 55 S. W.

952); the defendants had brought a suit on September 12, 1895, to enforce their judgment of $13,868.80 by subjecting the railway and other property to an alleged lien, had obtained a decree, and that decree had been reversed (Memphis & Little Rock Railroad Company v. Organ, 70 Ark. 195, 66 S. W. 922), and that suit had been abandoned.

On June 1, 1893, the Central Trust Company, the trustee named in the mortgage of the railroad and its appurtenances made by the Little Rock Company in 1887, filed its bill in the court below to foreclose that mortgage, and on that day the court appointed a receiver of the railroad and its appurtenances who took immediate possession thereof and held the same until he delivered this property to the purchaser under the foreclosure sale, which was made on October 25, 1898. The Little Rock Company was a party defendant to this foreclosure, and the decree which was rendered on October 22, 1894, provided that the property should be sold, that all equity of redemption of the Little Rock Company and all persons claiming under it should be thereupon foreclosed and forever barred, that in addition to the purchase price which should be bid the purchaser should pay "all claims filed in this cause, but only when the court shall allow such claims and adjudge the same to be prior in lien to the mortgage foreclosed in this suit, and in accordance with the order or orders of the court allowing such claims and adjudging with respect thereto." The decree also contained these provisions: "The court reserves the right to retake and resell said property in case of the failure or neglect of the purchaser or purchasers, or his or their assigns, approved by the court aforesaid, to comply with any order of the court in respect to the payment of receiver's certificates, debts, or obligations, or of prior liens or claims above mentioned within 20 days after service of such order upon such purchaser or purchasers, or his or their assigns. * * * And, further, the said purchaser or purchasers shall have and be entitled to hold the said railroad and property free and discharged of and from all lien of the mortgage foreclosed by this suit, and from the claims of the parties to this suit, or any of them, except the claim of the complainant, Central Trust Company of New York, by reason of the payment of $45,000 made by it to the State of Arkansas, as hereinabove mentioned. All questions not hereby disposed of and determined are hereby reserved for further adjudication, the settlement of the same being held not to be necessary for the purposes of this decree. And the court reserves all right to make such further order at the foot of this decree as may seem just and proper." While this suit was pending and the railroad and its appurtenances were in the possession of the receiver, and on September 28, 1895, the defendants filed their petition of intervention therein, in which they alleged that by virtue of their claim against the old reorganized company, for which they had then secured the judgment for $13,868.80, which was subsequently reversed, they had a lien upon the line of railroad between Little Rock and Memphis, which the Little Rock Company had mortgaged to the Central Trust Company, which was prior in lien and superior in equity to the lien of the mortgage, and prayed that the railroad should be first applied to the satisfaction of that lien. On August 7, 1896, they filed an amended and supplemental petition in this foreclosure suit, and prayed that the railroad then in the possession and under the control of the receiver of the court below should be adjudged by that court to be subject to their alleged lien for their claim against the old reorganized company, that such lien be declared to be superior and paramount to all other liens and claims, and that the railroad and its appurtenances be sold for the payment thereof, or that a sufficient amount of the proceeds of the sale in the foreclosure suit be segregated, set apart, and applied to the amount due them in preference to all other claims and demands whatsoever. The foreclosure sale was made on October 25, 1898, to Frederick P. Olcott. It was confirmed by the court, and certain allowances were made and directed to be paid out of the proceeds of the sale on November 19, 1898, but no order or decree was ever made that the prayer of the petitioners in their intervening petition should be granted, or that they were entitled to a lien paramount to that of the mortgagee and of the purchaser at the foreclosure sale. Olcott, the purchaser, conveyed the railroad to the Choctaw & Memphis Railroad Company, which subsequently and on June 30, 1900, conveyed it to the Gulf Company, which now owns it.

On September 8, 1902, the defendants in this suit filed a bill in the chancery court of Crittenden county, against the Gulf Company and others, in which they alleged that their judgment of $17,956.36 against the reorganized company was secured by a lien upon the entire railroad from Little Rock to Memphis and its appurtenances, which was paramount and superior to the title of the Gulf Company under the foreclosure sale, and prayed that the railroad and all its appurtenances and franchises be sold to satisfy that lien. They also alleged that the old reorganized company had certain specific real estate upon which they had levied an execution under their judgment, that the reorganized company was insolvent, and prayed that a receiver of its assets and property be appointed, and that its property be sold and the proceeds distributed among its creditors. Thereupon the Gulf Company and the Choctaw & Memphis Railroad Company, its predecessor in interest under the foreclosure, exhibited their supplemental bill in the foreclosure suit, in which they set forth the material facts which have been recited, and also the fact that on March 12, 1897, in this foreclosure suit, the court after hearing, enjoined the defendants from levying an execution upon the specific property upon which they aver in their bill that they have levied an execution, and prayed that the defendants be enjoined from prosecuting their suit in the state court to establish a lien upon the railroad paramount to their title under the foreclosure decree, and to sell the specific property which they had theretofore been enjoined from selling, and the court granted a preliminary injunction in accordance with this prayer.

Wm. M. Randolph (George Randolph and Wassell Randolph, on the brief), for appellants.

Thomas S. Buzbee (Edward B. Peirce and John T. Hicks, on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above). The concurrent jurisdiction in this country of many courts, national and state, and the conflict, confusion, and uncertainty that their simultaneous exercise of their powers over the same subject-matter would entail, have caused the adoption of this salutary rule of practice and administration, the strict observance of which comity, courtesy, and necessity alike demand. The legal custody of specific property by one court of competent jurisdiction withdraws it, so far as necessary to accomplish the purpose of that custody, until that purpose is completely accomplished from the jurisdiction of every other court. The court which first acquires jurisdiction of specific property by the lawful seizure thereof, or by the due commencement of a suit in that court, from which it appears that it is, or will become, necessary to a complete determination of the controversy involved, or to the enforcement of the judgment or decree therein, to seize, charge with a lien, sell, or exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court and entitles the former to retain the control of it requisite to effectuate its judgment or decree in the suit free from the interference of every other tribunal. Farmers' Loan & Trust Company v. Lake Street Railroad Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Central Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; Williams v. Neely, 67 C. C. A. 171, 185, 134 Fed. 1, 15, 69 L. R. A. 232;

Barber Asphalt Company v. Morris, 66 C. C. A. 55, 58, 132 Fed. 945, 948, 67 L. R. A. 761; Gates v. Bucki, 53 Fed. 961, 969, 4 C. C. A. 116, 128, 129.

When a court has by lawful proceedings taken possession of specific property, it has during that possession, and as incident thereto, jurisdiction to hear and determine all questions respecting the title, possession, and control thereof, and courts of co-ordinate jurisdiction are powerless to render any judgment or decree that will invade or disturb the possession of the property while it is in the custody of the court which has thus first acquired it. Moreover, the court which has thus acquired dominion over specific property, and which by its decree adjudges its sale or other disposition, may lawfully retain, after the sale and delivery of the possession of the property to the purchaser, the requisite jurisdiction to adjudicate claims for liens upon it, to make its decree effective, and to protect the title of its purchaser under its decree against the disregard or avoidance thereof by means of suits in other courts or other proceedings. The jurisdiction of a court over a subject-matter or a cause once lawfully acquired includes the power to enforce its judgment or decree, and to protect the title of those holding under it from every attempt to avoid or annul it. Chicot Co. v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 37 L. Ed. 546; Julian v. Central Trust Company, 193 U. S. 93, 112, 24 Sup. Ct. 399, 48 L. Ed. 629; Wabash Railroad Company v. Adelbert College (Supreme Court, January 6, 1908) 28 Sup. Ct. 182, 52 L. Ed. ——; Barber Asphalt Paving Co. v. Morris, 132 Fed. 945, 949, 66 C. C. A. 55, 59, 67, 67 L. R. A. 761; Brun v. Mann, 80 C. C. A. 513, 151 Fed. 145.

A bill in equity dependent upon a former suit in the same court may be maintained by the purchaser under the decree or by any other party interested therein (1) to aid, enjoin, or regulate the original suit; (2) to restrain, avoid, explain, or enforce the judgment or decree therein; or (3) to enforce, to enjoin the enforcement of, or to obtain an adjudication of liens upon or claims to property involved in the original suit. Brun v. Mann, 151 Fed. 145, 80 C. C. A. 513. And where a Federal Court acts in aid of its own jurisdiction to render its decree or the title under it effectual it may, notwithstanding section 720, Rev. St. (U. S. Comp. St. 1901, p. 581), restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction. Sharon v. Terry, 36 Fed. 337, 1 L. R. A. 572; French v. Hay, 22 Wallace, 250; Dietsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 354; Julian v. Central Trust Company, 193 U. S. 112, 24 Sup. Ct. 399, 48 L. Ed. 629.

In the case last cited the Southern Railway Company was the purchaser of a railroad under a decree of foreclosure rendered by a federal court on May 2, 1894, wherein that court reserved to itself jurisdiction over the allowance of claims to liens upon the property in the terms of the decree in the case at bar. It provided in its decree that the purchaser should pay "all claims filed in this cause, but only when the court shall allow such claims and adjudge the same to be prior in lien to the mortgage foreclosed in this suit, and in accordance with the order or orders of the court allowing such claims and adjudging with re-

spect thereto," and contained the provision regarding the retaking and reselling of property which appears in the decree in this foreclosure suit. Page 110 of 193 U. S., and page 406 of 24 Sup. Ct. (48 L. Ed. 629). The Supreme Court of North Carolina had held that under the Constitution and laws of that state the railroad in the hands of the purchaser under this decree was subject to levy and sale to satisfy judgments against the mortgagor on claims against it which had accrued subsequent to the foreclosure sale and the sheriff had accordingly levied executions issued upon such judgments upon the property of the purchaser at that sale and was about to sell it to satisfy those judgments. Thereupon the purchaser and the complainant in the foreclosure suit exhibited a supplemental bill therein in which they set forth these facts. The circuit court enjoined the sheriff from proceeding to sell the property under the executions and the Supreme Court affirmed its decree, and said:

"It is obvious that by this decree of sale and confirmation it was the intention and purpose of the federal court to retain jurisdiction over the cause so far as was necessary to determine all liens and demands to be paid by the purchaser. It accepted the purchaser and thereby made it a party to the suit. Blossom v. Railroad Co., 1 Wall. 655, 17 L. Ed. 673. The court reserved the right to retake the property if necessary to enforce any lien that might be adjudged against the same. On the other hand, the purchaser agreed to pay only such demands as the circuit court might declare and adjudge to be legally due, with the right of appeal from such judgment. These provisions make apparent the purpose of the court to retain jurisdiction for the purpose of itself settling and determining all liens and demands which the purchaser should pay as a condition of security in the title which the court had decreed to be conveyed. If the sheriff is allowed to sell the very property conveyed by the federal decree, such action has the effect to annul and set it aside, because in the view of the state court it was ineffectual to pass the title to the purchaser. In such case we are of opinion that a supplemental bill may be filed in the original suit with a view to protecting the prior jurisdiction of the federal court and to render effectual its decree. Central Trust Co. of New York v. St. Louis, Arkansas, etc., Railroad Co. (C. C.) 59 Fed. 385; Fidelity Ins. Trust & Safe Deposit Co. v. Norfolk & W. R. R. Co. (C. C.) 88 Fed. 815; State Trust Co. v. Kansas City, etc., R. R. Co. (C. C.) 110 Fed. 10."

In Wabash Railroad Co. v. The Adelbert College, a case in which the Supreme Court delivered its opinion on January 6, 1908, the college had brought a suit in one of the state courts of Ohio on April 28, 1883, upon certain equipment bonds which were issued in 1862 and which the college averred were secured by a lien upon a part of the railroad of the Wabash Company, which was paramount to the liens of certain mortgages thereon which were given subsequent to 1862, and the college prayed for an establishment of this lien and for a sale of the road to satisfy it. In 1897 it secured a decree to that effect which was affirmed on appeal to the Supreme Court of Ohio and was then challenged by an appeal to the Supreme Court. The great objection to the decree was that the state courts were without jurisdiction to render it because the United States Circuit Court, in suits commenced after 1883 to foreclose mortgages made subsequent to 1862, had taken possession of the railroad by its receivers meanwhile, and in 1889 had rendered a decree of foreclosure sale wherein it had reserved to itself the power to adjudge the superiority to the mortgages, of all alleged

liens, and the right of their holders to enforce them against the property in the hands of its purchasers. The Supreme Court reversed the decisions of the Ohio courts, held that although the federal court had delivered over the possession of the property to the purchasers under its decree more than 15 years before, yet it still retained the exclusive jurisdiction to determine all claims to liens upon it superior to the liens of the mortgages foreclosed and to the title of the purchaser under the decree, and that the College had no remedy but to present its claim to that court.

The principles and decisions to which reference has now been made seem to leave little doubt of the proper disposition of the issue before us. Counsel for the defendants, however, contend that the state court first acquired jurisdiction of this railroad and of the lots upon which the defendants made their levy in 1902 by the commencement of their suit in 1880 and that because the subjection of all this property to a lien to secure the payment of the judgment which they recovered in that suit against the old reorganized company on February 27, 1902, is necessary to satisfy that judgment, and because a court which once acquires jurisdiction of the parties to and the subject-matter of a controversy may retain them against all other courts until its judgment or decree is executed, the court in Crittenden county still has jurisdiction under the defendant's dependent bill to subject this property to the payment of that judgment notwithstanding the intervening foreclosure in the federal court. Another contention of counsel is that because the defendant's suit of 1880 was pending before the foreclosure, the mortgagor, the mortgagee, the purchaser, and the Gulf Company, his grantee, were parties by representation to that suit, and their title to the railroad and to the property levied upon was thereby subjected to the lien of the defendant's judgment.

A clear conception of the nature of the suit of 1880 and of the relations of the parties will do much to determine the soundness of these positions. That was a suit by the defendants against the old reorganized company to recover of it the damages which the defendants had sustained from the taking and use by it, and its predecessors in title, of 90 acres of land, and to enjoin that company from using that land until it paid for it. No lien or claim upon the railroad or upon any other property than the 90 acres of land was ever made in that suit. The final decree therein which was rendered in 1902 granted no injunction against the use of the land, found that most of this land had caved into the river, and that "the railroad is not using any of the remaining part of said land except what is known as the 'grave-yard-track' which covers about 1⅛ acres of land," and rendered a personal judgment against the old reorganized company alone and no other relief. The state court undoubtedly had jurisdiction of the 90 acres of land from the commencement of the suit in 1880 until it rendered its decree. But when it refused to enjoin the use of this land or to make any other decree concerning it, and its final decree was a mere personal judgment against the old reorganized company, it thereby completely renounced and surrendered its custody and jurisdiction of every part of the 90 acres, and the suit of 1880 may now be treated as though that

land was never affected thereby. The title of the Gulf Company is the title of the mortgagee perfected by the decree of foreclosure. The mortgagor, the Little Rock Company, derived its title to the railroad and its appurtenances from the reorganized company, and if in 1887, when it made its mortgage to the Central Trust Company, there had been a suit pending, the object of which fairly disclosed by the bill or other pleadings or proceedings therein had been to subject that property to a lien for the claims of the defendants, the court in which that suit was pending might thereby have acquired jurisdiction and custody of that property, and the mortgagor, and the mortgagee, and the subsequent purchaser might have taken their title subject to the execution of the final adjudication of that claim by that court. But jurisdiction of specific property may not be conferred upon a court by a suit in which neither the court nor any of the parties seek to affect it or its title. Pending suits which disclose no purpose of any one to change or to affect in any way the title to specific property of parties to them may not subject the purchasers or grantees thereof pendente lite to subsequent judgments or decrees therein which attempt to affect them. Such grantees are not parties by representation to such adjudications because the suits give no notice of an intention to seek such judgments when they take their titles. A court does not acquire jurisdiction of the specific property of a debtor by an action against him for a personal money judgment, and a purchaser from the debtor pendente lite takes it free from a subsequent judgment against him. A suit to enjoin a debtor from using specific property until the creditor's claim is paid confers on the court no jurisdiction over other property of the debtor, and a purchaser of the latter from the debtor pendente lite takes it free from any subsequent decree therein which attempts to affect it. The trustee and the bondholders in this case were bona fide purchasers of this railroad and its appurtenances for value in 1887 when they took their mortgage and paid more than $3,-000,000 for it. There was no suit then pending against the Little Rock Company, the mortgagor. The suit against the reorganized company, its predecessor in title, contained no notice of any claim or intention to affect the railroad or its appurtenances or the title of the Little Rock Company thereto, and asked the court for no relief against them. That suit therefore failed to invoke the jurisdiction of the Circuit Court of Crittenden county over the railroad and its appurtenances or to bring them into its legal custody, and it did not subject the mortgagee, the mortgagor, or the Gulf Company, neither of whom were ever parties to it, to any adjudication that the court in Crittenden county might subsequently render concerning that property, or its title.

It necessarily follows, therefore, that on June 1, 1893, when the suit was commenced in the federal court to foreclose the mortgage of 1887 and the railroad and its appurtenances were seized by the receiver of that court, no other court had either actual or potential jurisdiction or custody of any part of that property except possibly the "graveyard-track," the dominion over which the state court subsequently renounced. The receiver took actual possession of the property, and the

exclusive jurisdiction over it vested in the federal court. While this property was in its possession and on October 22, 1894, it rendered a decree that the railroad and its appurtenances should be sold to the highest bidder, that in addition to his bid the purchaser should pay all claims filed in that cause, but only when that court should allow such claims, and adjudge the same to be prior in lien to the mortgage foreclosed, that it reserved to itself the right in case he failed to pay any claims so adjudged to retake and resell the property to satisfy them, and that the purchasers should take and hold the railroad and its appurtenances free from the claims of all the parties to the suit except a certain claim of the trust company, and that all questions not disposed of by the decree were reserved for further adjudication.

After the defendants had obtained their judgment of $13,868.80 in their original suit of 1880, which was subsequently reversed (Memphis & Little Rock Co. v. Organ, 67 Ark. 84, 55 S. W. 952), and on September 12, 1895, they exhibited a dependent bill in the state court to fasten a lien for their claim, then evidenced by that judgment, upon the railroad superior to that of the mortgage and to sell the railroad and its appurtenances to discharge that lien, and they obtained a decree in that dependent suit to that effect. That suit and decree are, however, immaterial now, because (1) the federal court had the exclusive jurisdiction and the actual possession of the railroad and its appurtenances when that suit was filed, and the state court was powerless to affect that property by any adjudication in conflict with the decree of the federal court regarding it; and (2) because the decree in that suit was subsequently reversed. Memphis & Little Rock Company v. Organ, 70 Ark. 195, 66 S. W. 922.

On September 28, 1895, while the property was still in the possession of the federal court and before the sale under the decree, the defendants filed their claim in that cause in the form of an intervening petition, which they subsequently amended and supplemented by another petition on August 7, 1896. In each of these petitions they prayed the court below to decree that they had a lien upon the entire railroad and its appurtenances for the amount of their claim which was prior in time and superior in equity to the lien of the mortgage, and that this lien should be paid out of the property or out of its proceeds in preference to the lien of the mortgage. One who intervenes in a suit before the disposition of specific property in the custody of the court, after the decree of sale and before the sale and a distribution of the proceeds, and prays for a lien thereon and the payment of his claim from the proceeds of the property, thereby becomes a party to the suit, and is bound by the decree and the subsequent proceedings thereunder. Savannah v. Jesup, 106 U. S. 563, 565, 1 Sup. Ct. 512, 27 L. Ed. 276; Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322; French v. Gapen, 105 U. S. 509, 525; Ex parte Jordan, 94 U. S. 248, 251, 24 L. Ed. 123; Ingraham v. Dawson, 20 How. 486, 15 L. Ed. 984; Gumbel v. Pitkin, 113 U. S. 545, 547, 5 Sup. Ct. 616, 28 L. Ed. 1128. More than two years after the defendants had filed their amended petition in that suit and had become parties thereto, the property was sold under the decree. That decree and the accepted bid

constituted a contract of sale between the court and the purchaser. They also became a contract of sale between the parties to the suit, including the defendants, and the purchaser, because in the sale the court was the agent and representative of those parties, and it sold the property for them. One of the terms of that contract was that the purchaser in addition to his bid should pay such claims filed in that cause as the court should adjudge to be prior in lien to the mortgage and that the court reserved to itself exclusive jurisdiction to determine what claims were so prior in lien. The federal court which was then in the exclusive custody of the property had the undoubted right to retain exclusive jurisdiction to determine this question. That it effectually made this reservation is demonstrated by the fact that it did so in the very terms which the Supreme Court held sufficient to accomplish that purpose in Julian v. Central Trust Company, 193 U. S. 110, 24 Sup. Ct. 399, 48 L. Ed. 629. The agreement of the court that it reserved to itself and would exercise exclusive jurisdiction to determine the priority of the claimed liens which the purchaser promised to pay was one of the material terms of the contract of sale. One might be willing to pay a certain price for a railroad in addition to the claims against it which a specified court should adjudge prior in lien to the mortgage when he would hesitate long to pay that price or to purchase at all subject to claims which unknown tribunals might thus adjudge. Courts should not be less solicitous than private parties to strictly comply with the terms of their agreements, and the contract of sale in this case required the court below to exercise the exclusive jurisdiction which it reserved and to prevent any other court or party from imposing upon the property which it had sold any lien or charge on account of any claim filed in the foreclosure cause which had not been adjudged by the court which conducted that suit to be prior in lien to the mortgage. The power was conferred and the duty was imposed upon the court below to restrain all further proceedings in the state court which might have that effect. "The courts of the United States are bound to proceed to judgment and to afford redress to suitors in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." Hyde v. Stone, 20 How. 170, 175, 15 L. Ed. 874; Barber Asphalt Paving Co. v. Morris, 132 Fed. 945, 950, 952, 66 C. C. A. 55, 59, 60, 67 L. R. A. 761.

The result is that by the seizure of the railroad and its appurtenances in the foreclosure suit, and by the injunction which it issued in that cause against the levy of any execution upon the specific lots and tracts of land upon which the defendants subsequently caused the levy to be made, the court below acquired legal custody and exclusive jurisdiction of all this property; that by the terms of its decree it agreed with the purchaser and his subsequent grantees that they should not be required to pay any claim filed in that cause against this property, which that court should not adjudge to be secured by a lien thereon superior in equity to the lien of the mortgage; that by the terms of the decree that court reserved to itself the exclusive jurisdiction to determine the superiority of such alleged liens; that the claim of the

defendants to a lien upon this property superior to the lien of the mortgage was filed in that cause before the bid or the sale; that the defendants' dependent suit in the chancery court of Crittenden county commenced in 1902 to enforce their claim of a lien upon this property superior to that of the mortgage was violative of the contract of foreclosure sale and an attempt to avoid the terms of the decree, and to unlawfully incumber the title of the purchaser thereunder, that the chancery court of Crittenden county had no jurisdiction to adjudge the priority of the alleged lien of the defendants to that of the mortgage or to the title of the purchaser and of the Gulf Company his grantee; and that the only remedy of the defendants was the presentation and enforcement of their claim for this lien in the court below, which alone has jurisdiction to adjudge that they have a lien upon this property prior or superior to that of the mortgage, or to the title of the Gulf Company.

In the dependent bill in the state court the defendants prayed for the appointment of a receiver of the property of the old reorganized company, but the bill fails to aver that that company has any property except that which passed under the decree of foreclosure, and that upon which the defendants were enjoined in the foreclosure suit from levying any execution. If at the final hearing the fact should be made to appear that the reorganized company has other property, the permanent injunction should be limited to the prohibition of the prosecution of any suit to establish or enforce any lien or claim superior to that of the mortgage upon any of the property which passed to the complainants under the decree of foreclosure. As it does not as yet appear that there is any other property, the temporary injunction which restrains the prosecution of the dependent suit in the state court until the final hearing of this suit was not too broad, and the order which directed its issue must be affirmed.

It is so ordered.

HOOK, Circuit Judge. I concur in the result except as to the 90 acres. There are broad statements of principles in the opinion which it seems to me are not involved in the case. As to them, I express no opinion.

1. COURTS—CONFLICT OF JURISDICTION—COURT WHICH FIRST ACQUIRES CUSTODY EXCLUDES JURISDICTION OF OTHERS.

The lawful custody of specific property by a court of competent jurisdiction withdraws that property, so far as necessary to accomplish the purpose of that custody and until that purpose is accomplished, from the jurisdiction of every other court.

The court which first acquires the lawful jurisdiction of specific property by the seizure thereof, or by the due commencement of a suit, from which it appears that it is, or will become, necessary to a determination of the controversy involved or to the enforcement of its judgment or