## ST. LOUIS-SAN FRANCISCO RY. CO. v. McELVAIN.

(District Court, E. D. Missouri.   June 28, 1918.)

### No. 4858.

1. COURTS ⬅︎264(1)—JURISDICTION OF FEDERAL COURTS—ANCILLARY SUITS.

A federal court has jurisdiction, regardless of citizenship of parties or amount involved, of an ancillary suit to prevent relitigation in other courts of issues it has heard and determined in the original suit, and to protect the titles and rights of purchasers under its decree.

2. COURTS ⬅︎264(1)—JURISDICTION—ANCILLARY SUIT—ENFORCEMENT OF DECREE.

A dependent suit may be maintained by a party to the original suit, or by one who claims under the adjudication and decree therein, against one who assails that adjudication or decree in a subsequent suit in a court without appellate jurisdiction, on the ground that it is illegal or ineffectual, although the latter was not a party to the original suit, the adjudication, or decree.

3. JUDGMENT ⬅︎672—PERSONS CONCLUDED—CREDITORS' SUIT.

A general creditor, who proves his claim under an interlocutory decree in a suit brought by another general creditor in behalf of all, becomes a party, and is bound by the final decree therein.

4. MORTGAGES ⬅︎532—FORECLOSURE SALE—TITLE AND RIGHTS OF PURCHASER.

A foreclosure sale of the property of a mortgagor, in a suit by the mortgagee against the mortgagor, to which his unsecured creditors are not parties, by name or by service of process upon them, conveys the property mortgaged to the purchaser free from all claims of such creditors, either against the property or against the person of the purchaser.

5. JUDGMENT ⬅︎678(5)—PERSONS CONCLUDED—UNSECURED CREDITORS.

Unsecured creditors of a mortgagor are represented in a suit for foreclosure by their debtor, the mortgagor, and a decree and sale which bars the mortgagor, in the absence of fraud, bars them.

6. COURTS ⬅︎508(1)—FEDERAL COURTS—INJUNCTION AGAINST PROCEEDINGS IN STATE COURT.

Where a federal court first obtains jurisdiction of the subject-matter in controversy, it may enjoin all proceedings in a state court, commenced afterward, which would have the effect of defeating or impairing its jurisdiction, or the lawful effect of its orders or decrees, or titles which it has made in the exercise of that jurisdiction.

7. COURTS ⬅︎508(1)—FEDERAL COURTS—INJUNCTION AGAINST PROCEEDINGS IN STATE COURT.

It is no defense to a dependent injunction suit to prevent the nullification or impairment of the just legal effect of the adjudication, decree, or sale made by order of a federal court, or the title to property granted thereunder, that the defendant proposes to do so by means of a subsequent action at law and the trial by a jury of the issues already adjudged by such court.

8. RAILROADS ⬅︎195(2)—MORTGAGE FORECLOSURES—SALE TO REORGANIZED COMPANY—RIGHTS OF UNSECURED CREDITORS.

There is no moral turpitude nor illegality in an agreement between bondholders, secured by mortgages, stockholders, and the unsecured creditors of an insolvent railroad company that there shall be a foreclosure and sale of the mortgaged property to a new corporation, in which all the members of the three classes shall be permitted, at the option of each, to receive bonds or stock in substantial proportion to the respective ranks and equities of the classes.

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. COURTS ⟨⟩262(2)—EQUITY JURISDICTION—"ADEQUATE REMEDY AT LAW."

The "adequate remedy at law," which will prevent the maintenance of a suit in equity in a federal court, is a remedy as practicable and efficient to the ends of justice and its prompt administration as the remedy in .equity, and which would prevent a suit in equity in a federal court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adequate Remedy.]

In Equity. Suit by the St. Louis-San Francisco Railway Company against J. M. McElvain. On motion for preliminary injunction. Granted.

Cravath & Henderson, of New York City, and William F. Evans, of St. Louis, Mo. (Robert T. Swaine, of New York City, of counsel), for complainant.

C. G. Shepard, R. L. Ward, and Everett Reeves, all of Caruthersville, Mo., for defendant.

SANBORN, Circuit Judge. This is an application for a preliminary injunction to prevent J. M. McElvain from further prosecuting an action he has brought in the circuit court of Pemiscot county, Mo., against the complainant, St. Louis-San Francisco Railway Company, a corporation, and the purchaser at the foreclosure sale under the final decree of this court in North American Co. v. St. Louis & San Francisco Railroad Co. (in Equity, No. 4174, Consolidated Cause Final) 246 Fed. 260, and other cases, of all the property of that railroad company. McElvain's alleged cause of action is that the railroad company was indebted to him before the receivers of its property were appointed on May 27, 1913; that the final decree of foreclosure of the mortgages on its property and the sale thereof under that decree were made under a pre-conceived plan and agreement of the bondholders and stockholders of that corporation, whereby for their stock those stockholders received stock and bonds of the railway company which in effect bought at the sale under the decree and now holds the property of the railroad company. In its complaint the complainant has alleged the pertinent proceedings in the consolidated cause and in its constituent causes, and the nature of McElvain's action, including these facts:

The receivers of all the property of the railroad company were appointed on a general creditor's administrative bill in May, 1913, for the benefit of all the creditors of that corporation as their respective interests might appear. The bill in that suit was a class bill, brought by North American Company, a general creditor secured by none of the mortgages that have been foreclosed, a creditor of the same class as McElvain, for the benefit of itself and all others of that class. On April 3, 1914, Rail Joint Company, a corporation, and an unsecured creditor of the railroad company, filed its complaint in this court against the railroad company in behalf of itself and all other creditors of that company, alleged the insolvency of the railroad company, and prayed for the appointment of receivers of its proprty, the administration thereof, and the enforcement of the liens, rights, and claims of all its creditors. The railroad company answered, and on the complaint

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and answer this suit was, by order of this court, made on April 3, 1914, consolidated with the suit of the North American Company, and the appointments of receivers and all other orders in that suit were extended over the second suit and the consolidated cause, and the latter cause was named "North American Co., Complainant, v. St. Louis & San Francisco Railroad Co., Defendant, in Equity, No. 4174, Consolidated Cause." On May 29, 1914, this court rendered an interlocutory decree in this consolidated cause No. 4174, to the effect that all the property of the railroad company was thereby sequestered and set apart to pay the debts and obligations of or against the railway company, that all the holders of claims or demands against the railroad company, and all persons who claimed any interest in or lien upon any of the funds or property in the hands of the receivers as creditors of the railroad company, should file verified statements of their claims with the special master, Hon. Thomas T. Fauntleroy, at St. Louis, Mo., on or before October 1, 1914, and that each of them who failed so to do should thereby be barred from any share in the distribution of any of said funds or property, or the proceeds thereof. McElvain filed his claim against the railroad company with the master under this interlocutory decree, and it was allowed by the master and this court as a general unsecured creditor's claim.

On May 22, 1914, the trustees under the general lien mortgage of the railroad company, dated August 27, 1907, filed their complaint in this court against the railroad company for the administration of the trusts created by that mortgage, its foreclosure, the appointment of receivers, and a sale of the property of the mortgagor covered by it to satisfy the debt which it secured. On July 9, 1914, the trustee of the refunding mortgage of the railroad company, dated June 20, 1901, filed its complaint in this court against the railroad company for the foreclosure of that mortgage, the appointment of receivers, and the sale of the property of the railroad company to satisfy the debt secured by that incumbrance. By an order of this court made on January 21, 1916, and by prior orders, all the suits hereinbefore mentioned were consolidated into the suit entitled "North American Co., Complainant, v. St. Louis & San Francisco Railroad Co., Defendant, in Equity, No. 4174, Consolidated Cause, Final," and the final decree was rendered in this consolidated cause, and also in each of the cases brought by North American Company, Rail Joint Company, the trustees under the general lien mortgage, and the trustee under the refunding mortgage, respectively.

That decree adjudged the respective rights of all the creditors of the railroad company in the mortgaged property and in the property free from mortgages, and in the distribution of the proceeds thereof, excepting only such rights and claims as by the decree were expressly reserved for the exclusive subsequent determination of this court. It adjudged the foreclosure of each of the mortgages, the sale of all the property of the railroad company, the application of the proceeds of its mortgaged property to the payment of the debts secured thereon and to the payment of the claims prior in right or superior in equity to those of the bondholders, and the application of the proceeds of

the sale of the property that was free from mortgages to the payment of the creditors who had established their claims under the interlocutory decree according to their respective equities. Practically all the available property of the railroad company was covered by the mortgages, and the final decree rendered on March 31, 1916, provided that after the sale under the decree and the confirmation thereof the master should convey all the property to the purchaser, and that after such conveyance the purchaser should hold, possess, and enjoy that property free from the liens of the mortgages mentioned, and free from all claims, rights, interests, or equities of redemption of the railroad company, of its creditors and stockholders, and of all persons claiming through or under them.

The decree, however, in effect provided that, if the sale should be made to any purchaser for the benefit of any corporation organized, or to be organized, pursuant to any plan or agreement whereby any stockholder or stockholders of the railroad company should receive any stock, bonds, or other beneficial interest in such corporation on account of their stock in the railroad company, the sale would not be confirmed, unless there had been made to creditors of the railroad company who had presented their claims to the master or the court, in accordance with the orders of this court, a fair and timely offer of participation in such corporation through stocks, bonds, or otherwise. The sale under the final decree was made to or for the benefit of the complainant on July 19, 1916, pursuant to a plan and agreement made by the bondholders secured by the two mortgages and the stockholders of the railroad company, dated November 1, 1915, whereby the stockholders of the railroad company, upon the payment of certain specified amounts in cash, were entitled to receive certain amounts of bonds and stock of the complainant in proportion to the rank and amounts of the stock of the railroad company which they held and either assigned or surrendered. Before the sale under the final decree an offer was made to McElvain and to the other unsecured creditors, who had proved their claims before the master, of $50 par value of the 6 per cent. noncumulative preferred stock, and $50 par value of the common stock of the railway company for each $100 of their duly presented claims, and this offer to McElvain has since been repeated, the last time on March 1, 1918, but he has always rejected it.

After the sale under the decree notice was given to the railroad company and its attorneys in the consolidated cause final, No. 4174, that a motion would be made to confirm the sale on August 29, 1916. Louis Houck and seven other unsecured creditors of the railroad company filed objections to the confirmation of the sale, which raised for determination by the court all the issues sought to be raised by McElvain by his action in the circuit court of Pemiscot county, Mo.; that is to say, that, because the railway company was organized for the purchase of the property at the sale under the decree pursuant to the plan and agreement whereby the stockholders of the railroad company were offered bonds and stock of the railway company upon the payment of certain amounts in cash and the surrender or assignment of their stock in the railroad company, a fraud was perpetrated on the unsecured

creditors of the railroad company; that the railway company would not pay the full value of the property formerly owned by the railroad company, and would not pay for that property under the decree; that that property was, and after the sale still would be, subject to the payment of the claims of the unsecured creditors; and that the railway company would still be legally liable to pay them the amounts of their claims against the old company. Houck and his associates made still other objections to the confirmation of the sale.

Evidence was given on the issues thus presented, there was a final hearing on the motion, the objections. and the evidence, and upon arguments of counsel the court found that the objections were not tenable, and made an order of confirmation of the sale, wherein it adjudged and decreed that under and pursuant to and in connection with the plan and agreement of November 1, 1915, for the reorganization of the St. Louis & San Francisco Railroad Company, a fair and timely offer of cash, or a fair and timely offer of participation in St. Louis-San Francisco Railway Company, a corporation, organized for the purpose of becoming the owner, through a sale under the final decree, of the property of the railroad company, had been made to all the creditors who had presented their claims as ordered by the court, that the special master should convey the property of the railroad company to the railway company upon payment to him of the purchase price thereof bid at the sale, and that the railway company thereafter should hold the same free from the claims of the railroad company, of its creditors, and of all parties claiming under them or either of them. The special master made and delivered the conveyance to the railway company as directed. He subsequently reported to the court that the purchase price had been paid, his reports were approved and confirmed by the orders of this court, and he was directed to pay to the unsecured creditors whose claims had been allowed their pro rata shares of the proceeds of the sale, and he has paid or tendered to McElvain his share pursuant to that direction.

After the confirmation of the sale, and the conveyance of the property to the railway company, it mortgaged it to secure its bonds to the amount of more than $194,000,000, and it issued its stock, of the par value of $57,000,000, and these bonds and this stock was now in the hands of numerous holders, who have purchased them for value without notice of McElvain's claim. This issue of bonds and stock, and the taking and purchase thereof by the holders, has been done in reliance upon the final decree and the order of confirmation of this court, and in the belief that thereunder the railway company and the property it holds were exempt from all claims of the creditors of the railroad company not expressly reserved in the final decree for the exclusive determination of this court.

After all this had been done, and on June 13, 1917, McElvain brought an action against the railway company in the circuit court of Pemiscot county, Mo., to recover of it the amount of his old claim against the railroad company for damages to a carload of mules inflicted by the negligence of that company in February, 1913, a claim which he had subsequently reduced to a judgment against the railroad company, ren-

dered by the circuit court of Pemiscot county on April 5, 1916. The railway company has demurred to his petition in that action in the state court, and that action is still pending, but has proceeded no farther. That petition of McElvain alleges no ground or reason for imposing upon the railway company, or upon the property formerly of the railroad company conveyed to the railway company under the decree and sale, liability for his claim and judgment against the railroad company, other than that the railway company was organized, and the final decree and sale were made and executed, pursuant to the plan and agreement whereby the stockholders of the railroad company were offered the participation in the railway company heretofore stated.

The facts which have now been stated are drawn from the allegations of the complaint admitted by the demurrer. The railway company asks that McElvain be enjoined from further prosecuting his action in the state court on the grounds that he can succeed in that action only by annulling the decree, the order of confirmation of the sale, the adjudication of this court embodied therein, the contract of sale made by this court with the purchaser at the foreclosure sale, and the title to the property granted to the railway company by the court's master's deed.

[1] Counsel for Mr. McElvain challenge the jurisdiction of this court to entertain this suit in equity, or to grant the injunction sought, on the ground that there is no federal question involved, no diversity of citizenship, and that the amount in question is less than the jurisdictional amount. But neither a federal question, nor diversity of citizenship, nor the jurisdictional amount necessary to sustain an original suit is requisite to the maintenance of a suit dependent upon or supplementary to an original suit, like the creditors' and foreclosure suits against the St. Louis & San Francisco Railroad Company, which have been described, of which this court had full jurisdiction. Brun v. Mann, 151 Fed. 145, 150, 80 C. C. A. 513, 518; Julian v. Central Trust Co., 193 U. S. 93, 113, 24 Sup. Ct. 399, 48 L. Ed. 629; White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67; Dewey v. West Fairmont Gas Coal Co., 123 U. S. 329, 8 Sup. Ct. 148, 31 L. Ed. 179; Shinney v. North American Savings, Loan & Bldg. Co. (C. C.) 97 Fed. 9, 12. Such a dependent suit is but a continuation, in a court of equity, of the original suit, to the end that more complete justice may be done.

A suit in equity, dependent upon an original suit or action of which the federal court had jurisdiction, may be maintained in that court (1) to aid, enjoin, or regulate the original suit; (2) to restrain, avoid, explain, or enforce the judgment or decree therein; (3) to enforce or adjudicate liens upon or claims to property in the custody of the court in the original suit; and (4) to enforce its decree or judgment in the original suit, to prevent the relitigation in other courts of the issues it has heard and adjudged in the original suit, and to protect the titles and rights acquired by purchasers under its decree, or judgment from attacks by suit or otherwise, based on the theory that its adjudications in the original suit were illegal and ineffective, and to accomplish these ends the court has the jurisdiction and authority to use its writs of in-

junction and its writs of assistance. Julian v. Central Trust Co., 193 U. S. 93, 113, 24 Sup. Ct. 399, 48 L. Ed. 629; Carey v. Houston & Texas Ry. Co., 161 U. S. 115, 126, 127, 132, 16 Sup. Ct. 537, 40 L. Ed. 638; Minnesota Co. v. St. Paul Co., 2 Wall. 609, 633, 17 L. Ed. 886; Riverdale Cotton Mills v. Mfg. Co., 198 U. S. 188, 195, 25 Sup. Ct. 629, 49 L. Ed. 1008; Freeman v. Howe, 24 How. 450, 460, 16 L. Ed. 749. Campbell v. Golden Cycle Min. Co., 141 Fed. 610, 612, 613, 73 C. C. A. 260, 262, 263; Lang v. Choctaw, Oklahoma & Gulf R. Co., 160 Fed. 355, 360, 361, 87 C. C. A. 307, 312, 313; Virginia-Carolina Chemical Co. v. Home Ins. Co., 113 Fed. 1, 6, 51 C. C. A. 21.

Counsel for Mr. McElvain argue that this suit cannot be maintained as a dependent suit, because a dependent suit can be maintained only between those who were parties to the original suit, either in person or by representation, and they insist that McElvain was not such a party. There are two answers to this contention:

[2] First. A dependent suit may be maintained by the party to the original suit, or by one who claims under the adjudication and decree therein against one who assails that adjudication or decree in a subsequent suit in a court without appellate jurisdiction, on the ground that it is illegal and ineffectual, although the latter was not a party to the original suit, the adjudication, or the decree. Julian v. Central Trust Co., 193 U. S. 93, 113, 24 Sup. Ct. 399, 48 L. Ed. 629; Virginia-Carolina Chemical Co. v. Home Ins. Co., 113 Fed. 1, 6, 51 C. C. A. 21. In the leading case of Julian v. Central Trust Co., 193 U. S. 93, 113, 24 Sup. Ct. 399, 48 L. Ed. 629, a decree of foreclosure and a sale of the property of the Western North Carolina Railroad Company, the mortgagor, were made at the suit of the trust company, the trustee for the bondholders in the federal court. The sale and delivery of the master's deed were made in August, 1894, to the Southern Company, which immediately took possession thereof, and thereafter operated it.

In the course of its operation the Southern Company caused, by its negligence, the death of Mr. James, one of its employés. Mrs. James, the administratrix of his estate, sued the Western North Carolina Railroad Company in one of the state courts of North Carolina for damages for his death, on the ground that for numerous specious reasons the decree of foreclosure, the sale, and the deed thereunder were ineffectual, the railroad and property were still that of the Western North Carolina Company, and it was liable for the negligent operation of its railroad by the Southern Company. The state court so held, and rendered a judgment against that company, which was affirmed by the Supreme Court of the state. Thereupon Mrs. James caused an execution to be issued upon that judgment and delivered it to Julian, the sheriff, who levied it on the railroad property as that of the Western North Carolina Company and advertised it for sale. Thereupon the Southern Company and the Central Trust Company brought a dependent suit in the federal court, which rendered the original decree, to enjoin the sale of the property by the sheriff, to enforce the adjudications and decree in the foreclosure suit and to protect the rights and title of the Southern Company thereunder, and the Supreme Court sustained that suit, the decree and the adjudications in the original suit,

253 F.—9

the rights and title of the Southern Company thereunder, and the injunction against the sale by the sheriff of any of the property levied upon under the execution from the state court. But neither Mr. James nor Mrs. James was a party to the original suit, either in person or by representation. If the purchaser at the foreclosure sale under the decree of the federal court in the Julian case could maintain a dependent bill against such strangers as Mrs. James, so much the more may the purchaser at the sale of the property of the Frisco Company under the original suits maintain a dependent suit against McElvain, who was a creditor of that company before and at the time of the foreclosure suit and sale.

[3, 4] Second. McElvain was a party by representation to the creditors' suits and the foreclosure suits in which the final decree and sale were made; to the creditors' suits because he was one of the class of general unsecured creditors in whose behalf those suits were brought, and he filed and proved his claim as such under the interlocutory decree therein, and he was a party to the foreclosure suits because he was represented therein by his debtor, the mortgagor. The unsecured creditors of an insolvent mortgagor have no claim or interest, except against and through the title of the mortgagor. A foreclosure and sale of the property of the mortgagor, in a suit by the mortgagee against the mortgagor to which the unsecured creditors are not parties by name, or by service of process upon them, conveys the property mortgaged to the purchaser free from all claims of such creditors of the mortgagor either against the property conveyed or against the person of the purchaser.

[5] The reason why such a decree and sale estops the unsecured creditors of the mortgagor from asserting any personal liability of the purchaser for their debts against the mortgagor, and from any claim upon the property sold, is that they are represented in the foreclosure suit by their debtor, the mortgagor, and a decree and sale which bars the mortgagor, in the absence of fraud, bars its unsecured creditors. In the same way and for the same reason stockholders of the mortgagor are barred by a decree and sale which bars the mortgagor, their representative. Because stockholders and unsecured creditors of the mortgagor are parties by representation to a suit to foreclose a mortgage to which the mortgagor is a party, they may maintain a suit dependent upon the original foreclosure suit against the purchaser at the foreclosure sale, and the purchaser may maintain such a dependent suit against them. Carey v. Houston & Texas Ry. Co., 161 U. S. 115, 116, 121, 122, 131, 132, 16 Sup. Ct. 537, 40 L. Ed. 638. This dependent suit, therefore, may not be defeated by the claim that McElvain was not a party to the original suits.

[6] Counsel maintain that this court may not lawfully issue its injunction to prevent Mr. McElvain from further proceeding in his action in the state court, because section 720 of the United States Revised Statutes, which is now section 265 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1916, § 1242]), declared that:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such

injunction may be authorized by any law relating to proceedings in bankruptcy."

But in a case in which a federal court first obtains jurisdiction of the subject-matter in controversy, as this court did, by the commencement and prosecution to decree and sale of the original suits, and where it acts in aid of its own jurisdiction to enforce or protect its orders or decrees, or the title or disposition under them of the property within that jurisdiction, it may, notwithstanding the section cited, enjoin or restrain all proceedings in the state court commenced after it obtained jurisdiction, which would have the effect of defeating or impairing its jurisdiction or the lawful effect of its orders, decrees, adjudications, or titles which it has made, or is making, in the exercise of that jurisdiction. Sharon v. Terry (C. C.) 36 Fed. 337; French, Trustee, v. Hay, 22 Wall. 250, note, 22 L. Ed. 857; Lang v. Choctaw, Oklahoma & Gulf R. Co., 160 Fed. 355, 359, 360, 87 C. C. A. 307, 311, 312; Swift v. Black Panther Oil & Gas Co., 244 Fed. 20, 22, 156 C. C. A. 448, and cases there cited.

[7] Counsel insist that Mr. McElvain's action is a simple action at law, that he is entitled to a jury trial of it, and that for this reason he may not be enjoined from prosecuting it. The action of Mrs. James in Julian v. Central Trust Co. was a simple action at law based on the claim that the foreclosure and sale decreed by the federal court in that case were illegal and void, and although her claim was sustained by the courts of her state, the Supreme Court affirmed the injunction of the federal court against her and the sheriff, an injunction which perpetually prohibited them from proceeding further to nullify or impair the legal effect of the adjudications of the federal court in its foreclosure suit, its decree and sale, or the title of the Southern Company, the purchaser thereunder. It is no defense to a dependent suit to prevent the nullification or impairment of the just legal effect of the adjudications, decree, or sale made by order of a federal court, or the title to property granted thereunder, that the defendant proposes to do so by means of a subsequent action at law and the trial by a jury of the issues already adjudged by such court.

Finally, counsel for Mr. McElvain argue that he does not seek by his action to again litigate any question heard and decided by this court in the original suits, or to nullify or impair the legal effect of any adjudications made, the final decree rendered, the sale made, or the title granted thereunder in the creditors' and mortgagees' original suits in this court. Let us see. His action is grounded on the contention that the final decree, sale, and conveyance of the property formerly of the railroad company to the complainant were, as against him, an unsecured creditor, fraudulent in law and void, and did not have the effect to convey the title to the property to the complainant free from his claim against that property, or free from his claim of a personal liability of the complainant for the debt of the railroad company to him, although the contrary was adjudged by this court by its decree and orders, but that the decree and those orders leave that property still the property of the railroad company and charge the complainant with personal liability for his claim. And this Mr. McElvain

maintains because: First, the agreed plan and scheme of the bondholders and stockholders of the railroad company, under which the decree and sale were made, offered, and by its performance gave, to the stockholders of the railroad company, for their stock, a beneficial interest in the railway company, for their stock, a beneficial interest in the railway company consisting of bonds and stocks thereof, and this brought the decree and sale and the title thereunder beneath the ban of the decisions in such cases as Northern Pacific Ry. Co. v. Boyd, 177 Fed. 804, 101 C. C. A. 18; Id., 228 U. S. 482, 502, 504, 33 Sup. Ct. 554, 57 L. Ed. 931; Louisville Trust Co. v. Louisville, etc., Ry. Co., 174 U. S. 674, 682, 684, 19 Sup. Ct. 827, 43 L. Ed. 1130; Central Improvement Co. v. Cambria Steel Co., 210 Fed. 696, 701, 702, 127 C. C. A. 184, 189, 190; Kansas City Southern Ry. Co. v. Guardian Trust Co., 240 U. S. 166, 36 Sup. Ct. 334, 60 L. Ed. 579; and because, second, the upset price for the sale of the property and the price at which it was sold was so far below its real value that a just and reasonable price was not paid for it by the railway company, although by the decree the upset price was adjudged fair, and by the order of confirmation of the sale and the orders accepting and disposing of the purchase price this court adjudged that the price bid at the sale was just and reasonable and that the railway company had paid that price in full.

Now were not these claims of Mr. McElvain, the maintenance of which is indispensable to his success in his action in the state court, tried and adjudged against him in the original suits which the mortgagees brought in this court? When those suits were brought the St. Louis & San Francisco Railroad Company was hopelessly insolvent, all its property was thereupon lawfully sequestered and placed in the hands of the receivers appointed by this court, to be sold and distributed to its creditors and stockholders in accordance with their respective rights and equities. There were numerous mortgages for large amounts upon the various portions of the property of the railroad company underlying the mortgages that were foreclosed. The holders of the bonds secured by the mortgages that were foreclosed had the indisputable right to a foreclosure of these mortgages, and a sale of the mortgaged property to themselves for the full amount of those mortgages, to be paid by a simple surrender of their bonds, unless some one would bid and pay a larger amount in cash. They had the equitable and legal right by foreclosure to acquire the indisputable title to the mortgaged property, and to prevent the unsecured creditors and the stockholders of the railroad company from receiving anything whatever on their claims and stock, unless they raised and bid money sufficient to discharge the mortgages in foreclosure which it was practically impossible for them to do. At that time, in order to enable the property in the hands of the railroad company to earn a reasonable income, it was necessary to raise a large amount of money to purchase equipment, to improve the railroad, and to pay other necessary expenses, and it was desirable to retain the good will and the aid of the stockholders and the unsecured creditors of the railroad company.

[8] To this end the bondholders proposed the plan and agreement

between themselves and the stockholders and the unsecured creditors of the mortgagor, which was finally accepted and performed by the holders of more than 90 per cent. of the amount of the bonds and more than 90 per cent. of the amount of the unsecured claims and of more than ninety per cent. of the amount of the stock. There is no moral turpitude, nor is there any illegality in the making and performance of an agreement between the bondholders secured by mortgages, the stockholders, and the unsecured creditors of an insolvent mortgagor, that there shall be a foreclosure and sale of the mortgaged property to or for the benefit of a new corporation in which all the members of the three classes shall be permitted at the option of each of them to take the bonds or stock of the new corporation in substantial proportion to the respective ranks and equities of the classes. Indeed, a foreclosure and sale under such an agreement is the most practicable, equitable, and beneficial method of foreclosure and sale of vast railroad or other properties that has yet been devised. For, as Mr. Justice Brewer said in delivering the opinion of the Supreme Court in Louisville Trust Co. v. Louisville, etc., Ry. Co., 174 U. S. 674, 683, 19 Sup. Ct. 827, 830 (43 L. Ed. 1130):

> "We may not shut our eyes to any facts of common knowledge. * * * We must therefore recognize the fact, for it is a fact of common knowledge, that, whatever the legal rights of the parties may be, ordinarily foreclosures of railroad mortgages mean not the destruction of all interest of the mortgagor and a transfer to the mortgagee alone of the full title, but that such proceedings are carried on in the interests of all parties who have any rights in the mortgaged property, whether as mortgagee, creditor or mortgagor."

No court, so far as the briefs and citations of counsel and the investigation of the court have informed it, has ever held that a foreclosure decree and sale under such an agreement is either fraudulent in law or fraudulent in fact, or illegal as against either unsecured creditors or stockholders. In Northern Pacific Ry. Co. v. Boyd, 228 U. S. at page 503, 33 Sup. Ct. at page 560, 57 L. Ed. 931, the Supreme Court said:

> "But it is now settled that such reorganizations are not necessarily illegal, and, as proceedings to subject the property must usually be in a court where those who ask equity must do equity, such reorganizations may even have an effect more extensive than those made without judicial sale, and bind creditors who do not accept fair terms offered."

The foreclosure decrees and sales which have been held fraudulent in law and voidable as against unsecured creditors in the Boyd Case, and the other cases cited above, were those that had been made under agreements between the secured bondholders and the stockholders of the mortgagor, whereby the stockholders received beneficial interests, by means of stock, bonds, or otherwise, in the purchasing corporation, without giving or offering any such beneficial interest whatever to the unsecured creditors, in violation of the trust under which an insolvent corporation holds its property, for, first, its secured creditors; second, its unsecured creditors; and, third and last, its stockholders. The plan and agreement under which the foreclosure decree and sale in this case was made was no secret, it was pre-

sented to this court in the original suits, and this court adjudged in the final decree that the sale under it would not be confirmed unless nor until a fair and timely offer of beneficial participation in the purchasing company was made to the unsecured creditors. Before the hearing upon that confirmation was had, such an offer, an offer much more beneficial than the provision in the agreement for the stockholders, had been made to the unsecured creditors; most of them had accepted it; a few, and among them Mr. McElvain, had not. Mr. Houck and several other unsecured creditors, who had not done so, challenged the confirmation on the ground that the offer to the unsecured creditors was not fair and just, that the plan, agreement, and offer were, and the foreclosure and sale would be, fraudulent in law as against unsecured creditors under the decisions upon this subject in the Boyd Case and others which have been cited.

Upon this subject evidence was introduced, extensive arguments were heard, and this court found and adjudged that the offer was just, timely, and fair; that the plan and agreement and offer, and the foreclosure and sale thereunder, perpetrated no fraud upon any of the unsecured creditors and violated no trust in their favor; but that they were just and equitable—and upon that finding and adjudication it ordered the foreclosure sale confirmed and the property conveyed and delivered to the railway company, free from any legal or equitable claims of the unsecured creditors of the mortgagor against that property, or against the purchaser at the sale, except those claims which were reserved in the decree for the exclusive determination of this court.

Nor was this finding, adjudication, and order made until after the objections that the upset price and the price bid at the sale were much less than the value of the property, and that the property was sold so low that the sale at that price would be unjust, inequitable, and unlawful, were made, argued, and decided. The facts then established, however, were that every bondholder, every stockholder, every unsecured creditor, had received an offer to permit him to participate in the benefits of the purchase on the equitable basis on which others of his class were permitted to participate therein under the plan and agreement that, if the purchase price was low, each bondholder, creditor, and stockholder had the opportunity to participate in the profits of the purchase of the property at that low price; that every unsecured creditor had the opportunity to participate by simply assigning or surrendering his claim against the railroad company and accepting the par value of his claim in the stock of the railway company without contributing any money; that the purchase price of the property was in reality, not only the amount bid at the sale, but that amount, plus the value, whatever that was, of all that part of the bonds, unsecured claims, and stock above the amount paid thereon out of the amount bid, which was exchanged for the stock and bonds in the new railway.

In view of these facts, and the existing situation, this court then found and adjudged that the upset price and the bid were just, fair, and equitable; that the sale and delivery of the deed and property

would pass the title to the purchaser, the railway company, would leave that company free from liability for the claims against the railroad company not reserved in the decree for the exclusive determination of this court, and would leave the property free from any liens of the mortgagees in the foreclosure suits of the stockholders of the old company and of its unsecured creditors; and that the sale ought to be confirmed. Thereupon it was confirmed, the master conveyed the property to the railway company, collected and distributed the purchase price, reported his action to this court, which by its orders approved his reports, and adjudged that the railway company had paid for the property in full. So it is that in the original suits brought by the unsecured creditors, and in the original suits brought by the bondholders secured by the mortgages foreclosed, this court considered, decided, and adjudged that the claims now made by McElvain in his action in the state court, the maintenance of which is indispensable to his success in that action, are unfounded. He now seeks by that action to try again by a jury in the state court the issues thus decided, and by means of that trial and the resulting judgment he seeks to strike down the final decree, the sale, and the conveyance of the property formerly of the railroad company, and thus to deprive the complainant, the purchaser at the sale, of the benefit of the title conveyed to him and of the adjudications of this court that the complainant took and holds the property so conveyed free from all liens and claims upon it and free from all claims of personal liability on account of the debts of the old railroad company, except such claims as this court reserved by the decree for its exclusive determination.

The jurisdiction and authority have been conferred, and the duty has been imposed, upon the federal courts, as has been demonstrated in the earlier part of this opinion, to sustain dependent suits to prevent the relitigation by subsequent suits in other courts of the issues heard and adjudged by the federal courts in original suits, to protect the rights and titles acquired under their decrees in such suits from attacks, by suits or otherwise, by those bound by such decrees, when such suits are founded on the theory that the adjudications of the federal courts were illegal or ineffective, and to use their injunctions and writs of assistance to effect this prevention and protection, and they may not lawfully renounce this jurisdiction or disregard this duty.

[9] Counsel object to this suit, and to the issue of the injunction, upon the grounds that no irreparable injury will result from the action of McElvain, and that the complainant has an adequate remedy at law. But useless and baseless litigation by subsequent suits in courts, with no appellate jurisdiction to relitigate issues decided in a federal court, to nullify or disregard its decrees and orders, and to avoid the titles and rights adjudged and granted thereunder, on the ground that its adjudications were unlawful or inequitable, inflict ample injury to sustain a suit in equity. And the adequate remedy at law, which will prevent the maintenance of a suit in equity in a federal court, is a remedy "as practicable and efficient to the ends of justice and its prompt administration as the remedy in equity." Boyce v. Grundy 3 Pet. 210, 215, 7 L. Ed. 655; Oelrichs v. Spain, 15 Wall. 211, 228, 21 L. Ed. 43;

Hayden v. Thompson, 71 Fed. 60, 63, 17 C. C. A. 592; Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 265, 26 C. C. A. 389; Rogers v. Penobscot Mining Co., 154 Fed. 606, 613, 83 C. C. A. 380.

Moreover, it is such a remedy in a federal court only that will prevent the maintenance of a suit in equity in a national court. The fact that there may be such a remedy in a state court is not material. Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819; Arrowsmith v. Gleason, 129 U. S. 86, 98, 9 Sup. Ct. 237, 32 L. Ed. 630; National Surety Co. v. State Bank of Humboldt, 120 Fed. 593, 602, 56 C. C. A. 657, 61 L. R. A. 394. The complainant has no such remedy and there is no logical or lawful escape from the issue of the injunction sought. Let a preliminary injunction, such as the complainant prays for in his complaint, effective until the final judgment in this case, or the further order of this court, issue upon the filing of a bond by or on behalf of the complainant in the sum of $1,000, approved by the clerk of this court, conditioned to pay to the defendant McElvain, his heirs or assigns, such costs and damages as may be incurred or suffered by him in case he shall be found to have been wrongfully enjoined or restrained by the injunction.