## PHIPPS et al. v. CHICAGO, R. I. & P. RY. CO.*

(Circuit Court of Appeals, Eighth Circuit. October 9, 1922.)

No. 5778.

**1. Railroads ⬤⟹30—Reorganization decree enforceable against dissenting creditors.**

Where a decree approving reorganization of an insolvent railroad company secured or offered to unsecured creditors their just and equitable shares of the beneficial interests in the reorganized corporation, the court may lawfully enjoin enforcement of claims of such creditors by execution against the property, or otherwise than as provided in the decree.

**2. Railroads ⬤⟹30—Judicial sale of property not essential to reorganization of insolvent company.**

It is not essential to the valid reorganization of an insolvent railroad company, in accordance with a plan approved by a large majority of its general creditors and also of its stockholders that its property should be transferred to the reorganized corporation through the medium of a judicial sale.

**3. Railroads ⬤⟹30—Court may require creditors to accept payment in securities of reorganized company.**

Where a court, through its receivers, has taken possession of the property of an insolvent railroad company in a creditors' suit, it has power to administer the property by authorizing its transfer to a reorganized company pursuant to a plan approved by a large majority of the creditors, and to require the nonassenting minority to accept payment, like the majority, in the stock and securities of the reorganized corporation.

**4. Railroads ⬤⟹30—Injunction against levy on property of reorganized company held to apply to its earnings.**

An injunction restraining creditors of an insolvent railroad company from interfering with its property after its transfer to a reorganized company *held* effective to prevent a levy on earnings of such property, made through its operation by the reorganized company.

**5. Judgment ⬤⟹672—Creditor, proving claim in creditors' suit, is bound by decree.**

A creditor of an insolvent railroad company, who, though not joining in a creditors' suit, was one of the unsecured creditors on whose behalf the suit was brought, and proved his claim therein, is bound by the decree.

**6. Courts ⬤⟹508(1)—One holding property under decree may apply at foot of decree for its protection.**

One holding property acquired by decree of a federal court may apply at the foot of the decree, or by a dependent suit, for protection of the property against one who assails the decree and attempts to subject the property to the judgment of a state court in violation of its terms, though the latter was not a party to the suit or decree.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit in equity by the American Steel Foundries and others against the Chicago, Rock Island & Pacific Railway Company. From a decree granting an injunction, Joseph Phipps and others appeal. Affirmed.

The appellants challenge the decree of the court below, which enjoined them from collecting a judgment of $7,000 against the Chicago, Rock Island & Pacific Railway Company, recovered by the appellant Joseph Phipps in the circuit court of Buchanan county, Mo., on February 25, 1916, in any other way than that provided in the final decree of the court below in the consolidated cause of American Steel Foundries against the railway company and Bankers' Trust Company against the railway company. That decree is a copy of the

original decree in the consolidated cause of the same title, rendered in the United States District Court for the Northern District of Illinois, the court of primary jurisdiction, on June 12, 1917, and it was rendered and recorded in the ancillary suit with that title in the Western District of Missouri after June 12, 1917. The final decree in the United States District Court in Illinois was the practical conclusion of suits in equity in that court against the railway company, brought by the two complainants mentioned, who were unsecured creditors, to impound, operate, administer, and distribute to its creditors, according to the respective ranks and the amounts of their claims, the property of the railway company. The first of those suits was brought by the American Steel Foundries, and receivers were appointed therein, who took possession of that property on April 20, 1915. In the suit of the Bankers' Trust Company for the holders of $20,000,000 of debentures of the railway company, the receiver was appointed, and the two suits were consolidated on February 12, 1917. The trust company's suit was commenced by a creditors' bill founded on a judgment against the railway company for $21,560,543.09, and an execution returned nulla bona. It was brought on behalf of the trust company and all other unsecured creditors of the railway company who chose to join in it. In this bill the trust company alleged, and by its answer the railway company admitted, that the latter had failed to pay the judgment, and the trust company prayed for a receiver, that all the property of the railway company be impounded for the benefit of itself and other like creditors, that the rights and claims of all interested in it be determined, that the property be fully administered, that it be sold, and that the proceeds be distributed ratably to the trust company and all other creditors who should prove their claims. The railway company admitted the averments of the bill by its answer, and prayed for the same relief, and further that the remainder of the proceeds of its property, after the payment and satisfaction of all the liens and claims of its creditors, should be paid to it.

On February 10, 1917, the court ordered that notice be given by mail and by due publication that all persons having claims against the defendant railway company or the receiver present and submit the same to the special master for hearing and determination prior to April 10, 1917. As is usual in cases of the administration and distribution of the property of railway and other corporations of great value, heavily incumbered, a plan of reorganization of the corporation, whereby its indebtedness would be and was greatly decreased, and unsecured creditors and stockholders were offered for their interests beneficial interests in the form of stock in the reorganized company, was proposed. That plan offered to each unsecured creditor, including Mr. Phipps, unpaid interest on his claim at 5 per cent. to and including June 30, 1917, in cash, and 6 per cent. preferred stock of the reorganized company to the amount of his claim, par for par, while it offered to the stockholders of the corporation, on condition that they contributed $40 per share, the 7 per cent. preferred stock of the reorganized company, par for par, which was subordinated to and made inferior in right and equity to the 6 per cent. preferred stock offered to the unsecured creditors.

When this plan of reorganization was finally presented to the United States District Court in Illinois, the property in its possession for administration and distribution was subject to the debts secured by mortgages thereon, subject to which all the proceedings before it were conducted, to the amount of about $257,000,000. Its receivers, in the administration of the property had incurred unpaid obligations to the amount of more than $17,000,000, the railway company owed unsecured debts to the amount of more than $21,000,000, and holders of 95 per cent. of the unsecured indebtedness and of 99 per cent. of the stock of the railway company had agreed to accept the offers made by the plan and to carry it out, if the court could and would, by its decree, deliver the property back to the defendant railway company reorganized according to the plan, save them and it the expense of a judicial sale and the formation and approval of another corporation, and protect the reorganized company and its property against liability to pay in full in cash the claims of those unsecured creditors who declined to accept the offers made to them by the plan. After careful consideration, the court concluded that it had the

power and that it was its duty so to do, and on June 12, 1917, it rendered its final decree to that effect. By that decree the court found the facts upon which it rests, found that the offers in the plan and the plan itself were fair and just to and for the benefit of all concerned, approved them, and decreed that the railway company and all persons in interest should perform and make it effective. In that decree the court found that the plan and offer included as a term and condition thereof "the granting to each and every holder of a debenture of the defendant railway company not deposited under said plan, or of a valid claim duly allowed against the defendant railway company or its receiver as described in said offer, the same treatment and terms as are accorded to the holders of said debentures subjected as aforesaid to said plan and agreement, namely, the payment in cash, at the rate of 5 per cent. per annum, of any interest accrued and unpaid upon said undeposited debentures and said claims to and including June 30, 1917, and the issuance and delivery, on July 1, 1917, or upon due demand made as soon as practicable thereafter, to each holder of such a debenture or claim, of said new 6 per cent. preferred stock par for par in respect of the principal of such debenture or claim, upon surrender and assignment of such debenture or claim."

In that decree the court adjudged that all persons having claims against the railway company, except mortgage bondholders, not theretofore proved in the cause, present and file them with the special master on or prior to June 14, 1917, and that every such claim not so filed, unless allowed to be filed by a separate order, was by said decree "barred, determined, and for naught held, and barred from participating in any way in any of the property of the defendant railway company," and that notice of such adjudication be given by a publication specified in the decree, and the court finally adjudged: "That all matters and questions not hereby disposed of, in so far as the same shall not be settled by agreement, are hereby reserved for future adjudication; that any party to these proceedings may at any time apply to this court, at the foot of this decree, for further relief; that the injunction contained in the orders appointing receivers herein be and is hereby continued as to all persons, firms, and corporations having claims against the defendant railway company or the receiver, accrued or matured prior to the entry of this decree, all such persons, firms, and corporations being hereby restrained and enjoined from interfering with, attaching, levying upon, or in any manner whatsoever disturbing any portion of the railroads, property, and premises of which the defendant railway company shall repossess itself by this decree; that jurisdiction hereof is retained by the court for that purpose and for the purpose of enforcing all the provisions of this decree."

On April 15, 1915, Joseph Phipps sued the railway company, T. R. Markham, its engineer, and W. F. Mellon, its fireman, for damages resulting from his personal injury, and on February 25, 1916, he recovered a judgment against them for $7,000 in the circuit court of Buchanan county, Mo. On April 9, 1917, counsel for Mr. Phipps filed proof of his claim with the special master in the creditors' distribution suit against the railway company in the United States District Court in Illinois, and the special master in that suit allowed the claim as of December 12, 1917. On December 21, 1918, the railway company tendered and offered to pay to Mr. Phipps interest on his judgment in cash to July 1, 1917, and to deliver to him $7,000 of its 6 per cent. preferred stock. That offer has since been repeated, and the further offer made to pay to him the accrued dividends on that stock, which in September, 1920, amounted to $1,260. These offers have been kept good and still remain available to Mr. Phipps, but he has declined to accept any of them. On May 18, 1920, his counsel caused an execution to be issued out of the circuit court of Buchanan county, upon his judgment, and caused the proper sheriff to attach and garnishee amounts owing to the railway company for freight charges by Hammond Packing Company, Swift & Co., and Morris & Co. for the transportation by the operation of the property delivered to it by the United States District Court in Illinois of personal property within 90 days preceding the execution. On the 21st day of May, 1920, the railway company applied to the court below at the foot of the ancillary decree for its injunction against the enforcement by Mr. Phipps of his judgment and claim against the railway

company in any other way than that prescribed by the final decree. There were pleadings, evidence, a final hearing, and a decree in favor of the railway company for the injunction it sought and costs.

John G. Parkinson, of St. Joseph, Mo. (James W. Mytton, of St. Joseph, Mo., on the brief), for appellants.

John E. Dolman, of St. Joseph, Mo. (Luther Burns, of Topeka, Kan., on the brief), for appellee.

Before SANBORN and LEWIS, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above). The evidence in this case has convinced that the Chicago, Rock Island & Pacific Railway Company was insolvent before and solvent after Judge Carpenter, under his final decree in the United States District Court for the Northern District of Illinois, delivered its property back to it, and for convenience that corporation before that delivery under the final decree will be called the insolvent company and after that delivery the reorganized company.

[1, 2] Counsel for Mr. Phipps assail the decree of the court below which enjoins him from enforcing his judgment against the railway company and its property by execution or in any other way than that specified in the final decree of the District Court of the Northern District of Illinois and in the ancillary decree of the court below in the creditors' suits on many grounds. That upon which they seem to place their chief reliance is that those decrees are void against Mr. Phipps, because those courts without a judicial sale adjudged the delivery of the property of the insolvent railway company to the reorganized company, and enjoined Phipps from interfering with it, or enforcing his judgment against it or against the railway company in any other way than through those courts in the creditors' consolidated cause, by taking the interest on his claim in cash and the $7,000 of 6 per cent. preferred stock of the reorganized company, which those courts adjudged to be his just and equitable share of the property of the company to which he was entitled. In support of this contention they cite and the court has examined Kansas City Southern R. Co. v. Guardian Trust Co. et al., 240 U. S. 166, 36 Sup. Ct. 334, 60 L. Ed. 579; Northern Pacific R. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931; Texas & Pacific Ry. Co. v. Bloom, 164 U. S. 636, 17 Sup. Ct. 216, 41 L. Ed. 580; Texas & Pacific Ry. Co. v. Johnson, 151 U. S. 81, 14 Sup. Ct. 250, 38 L. Ed. 81; Southern Pacific Ry. Co. v. Bogert, 250 U. S. 483, 39 Sup. Ct. 533, 63 L. Ed. 1099. But the opinions and decisions in those cases do not consider or rule the question in this case, because in none of them had the court, in the decree assailed, considered, adjudged, secured, or offered to the complainant his or its fair and just share of the property of the insolvent corporation it was administering and distributing, while in the case in hand the courts by their decrees carefully adjudged, secured, and still secure to Mr. Phipps his equitable share of the property which the court administered and distributed.

The vice which rendered the foreclosure, judicial sale, and delivery of the property to the reorganized corporation voidable by unsecured

creditors in the Boyd Case, 177 Fed. 804, 101 C. C. A. 18, Id., 228 U. S. 482, 502, 504, 33 Sup. Ct. 554, 57 L. Ed. 931, and in the Kansas City Southern Railway Co. Case, 240 U. S. 166, 36 Sup. Ct. 334, 60 L. Ed. 579, was not the lack of judicial sales of the property under the decrees, but the fact that under the plans of reorganization and by the decrees in those cases the stockholders of the insolvent corporations were given for their stock beneficial interests in the reorganized companies by the way of stocks, bonds, or other securities, while the unsecured creditors of the insolvent companies were given nothing. That vice does not inhere in the plan of reorganization or in the decrees in the case at bar. That plan and those decrees secured to Mr. Phipps and to the other unsecured creditors beneficial interests in the reorganized company of much greater proportionate value than those thereby secured to the stockholders of the insolvent company.

Nor does the Boyd Case nor the Kansas City Southern Case lend any support to the argument that plans of reorganization and decrees which secure or offer to creditors their just and equitable shares of the beneficial interests in the reorganized corporations are voidable by such creditors, unless they are executed by judicial sales of the property of the insolvent corporations. There were judicial sales under the decrees in those cases, and yet those decrees and sales were held voidable by creditors. The decisions in those cases demonstrate the fact that judicial sales are futile to extract the vice of a failure by a plan of reorganization and decree to secure to creditors their equitable shares of the beneficial interests in the reorganized corporations, and that fact is in itself a persuasive argument that a plan of reorganization and decree which does adjudge and secure or offer to the creditors their just and fair shares of the benefits of the reorganized company, either in its stocks, bonds, or other securities, is just, fair, and impervious to the attacks of such creditors, although no judicial sale is adjudged thereby or made thereunder.

[3] When the American Steel Foundries and the Bankers' Trust Company had brought their suits on behalf of themselves and all other unsecured creditors against the railway company in the District Court in Illinois on complaints which stated the inability of the railway company to continue to operate its railroad and its inability to pay the judgment against it for more than $20,000,000, and had prayed for the administration and distribution of all its property to its creditors, when the railway company had answered and joined in that prayer, when the court had appointed a receiver, he had taken possession of, and the court had thereby impounded for the benefit of the unsecured creditors, subject to the lien of the secured creditors, all the property of the railway company, that court held all that property in trust, subject to the liens of the secured creditors, to operate it and to distribute it or its proceeds to all the unsecured creditors and all the stockholders of the insolvent company according to the respective ranks and equities of their claims. Every unsecured creditor then and thereafter was a cestui que trust of the court, entitled to a like interest in the property in proportion to the amount of his claim, as every other such

creditor and every stockholder was a cestui que trust of the court, entitled to a like interest in the property in proportion to the amount of his stock to that of every other stockholder. When that court had so operated the property, and by its decree had so distributed either the property itself or its proceeds, it had faithfully executed its trust and rendered the right decree. Nor was it indispensable to such a just result, or to a lawful decree, that the interest or share of any of the cestuis que trust should be secured or paid to him or it in cash. It was within the power and the judicial discretion of the court to adjudge and secure that interest or share to him or it in the stock, bonds, or other securities of the reorganized company. Northern Pacific R. Co. v. Boyd, 228 U. S. 482, 508, 33 Sup. Ct. 554, 57 L. Ed. 931.

An analogous question arose in the foreclosure of mortgages upon the property of railroad companies after the Supreme Court had held in the Boyd Case and the Kansas City Southern Railway Company Case that judicial sales under decrees of foreclosure of such mortgages pursuant to plans of reorganization which did not assure to unsecured creditors interests in the property of the reorganized corporations more beneficial proportionately than those secured to the stockholders were voidable by such creditors. The decision of the Supreme Court in the case of the Kansas City Southern Railway Company was filed on February 21, 1916. The application for the final decree of foreclosure of the mortgages upon the property of the St. Louis & San Francisco Railroad Company in the United States District Court for the Eastern District of Missouri came on to be heard in March, 1916, pursuant to a plan of the parties in interest to have it sold to a reorganized corporation, in which the stockholders of the insolvent corporation, upon their payments of specified amounts in cash, were to receive beneficial interests in the form of stocks and bonds in the reorganized company in proportion to the ranks and amounts of the stock of the insolvent company which they held and assigned or surrendered. The writer rendered the final decree of foreclosure and sale in that case on March 31, 1916. To avoid the defect of the decrees in the Boyd Case and in the Kansas City Southern Railway Case he inserted in that decree the provision:

"That no sale hereunder of any property specified in article twenty-sixth and article twenty-seventh of this decree shall be confirmed to any purchaser who shall purchase said property on behalf of, or for the benefit of, any corporation organized, or to be organized, for the purpose or with the intention that it shall become the owner of said property or any part thereof, or any beneficial interest therein, through any sale under this decree, pursuant to any scheme, plan, or agreement whereby any stockholder or stockholders of the defendant railroad company shall receive any stock, bonds, or other beneficial interest in such corporation on account of their stock in the defendant railroad company, although he or they may pay some other consideration in addition therefor, unless and until there shall have been made under or pursuant to or in connection with such scheme, plan, or agreement, to creditors of the defendant railroad company who have presented their claims in accordance with the orders of this court in this cause, or in any constituent cause, and who have claims subordinate in lien and inferior in equity to the refunding mortgage or to the general lien mortgage, a fair and timely offer of cash, or a fair and timely offer of participation in such corporation through

stocks, bonds or otherwise, and this court reserves jurisdiction to determine whether such an offer to such creditors has been made under or pursuant to or in connection with any such scheme, plan or agreement, and jurisdiction to modify this decree in case it determines that no such offer has been made."

The sale under that decree was made to such a corporation, in which the stockholders of the railroad company, upon surrender of their old stock and the payment of specific amounts in cash, received stock or bonds of the reorganized corporation. An offer was made to the unsecured creditors of the insolvent company of $50 par value of the 6 per cent. cumulative preferred stock and $50 par value of the common stock of the reorganized company for each $100 of their claims. This was a much better offer than that made to and accepted by the stockholders. The motion to confirm the sale was heard and decided by the writer after notice to the parties in interest. Some unsecured creditors objected: (1) That the decree and sale would be voidable as to them under the decisions in the Boyd and the Kansas City Southern Cases; (2) that the offer to them was not a just and equitable share in the benefits of the reorganized company; and (3) that the upset price, at which the latter company bought the property, was far below the fair and full value of that property. Evidence was received, arguments were made, and a full hearing was had on the issues thus presented. The writer pointed out the fact that, if the upset and purchase price was less than the fair value of the property, each unsecured creditor, bondholder, and stockholder had the opportunity to participate in the profits of the purchase at that low price by accepting the offer made to him of the stocks or bonds of the purchasing company, adjudged that the offer made to the unsecured creditors was timely, fair, and equitable, that the decree and sale were right and just, that the sale be confirmed, and that the property of the railroad company be conveyed and delivered to the reorganized company free from any legal or equitable claims of the unsecured creditors against it or against the reorganized company, except from such claims as were reserved by the decree for the subsequent exclusive determination of the court rendering it.

So far as the court is informed, the plan disclosed by that decree and confirmation of the sale was the first to avoid fatal defects like those in the proceedings in the Boyd and Kansas City Southern Railway Co. Cases, and to adopt a procedure whereby a court of equity engaged in the administration and distribution of the property of an insolvent corporation to its creditors and stockholders could and did, by and pursuant to its decree transfer and deliver that property to and vest the title to it in a reorganized corporation, in which the holders of the great majority of claims against and of the stock in the insolvent corporation took therefor equitable interests in the form of stocks or bonds in the reorganized company free and clear of all the claims of objecting creditors to or against the property or against the reorganized company. The decree, the sale, and the procedure in the case against the St. Louis & San Francisco Railroad Company were assailed, as is the decree in the case in hand, by a judgment creditor of the insolvent company, who, like Mr. Phipps in this case, had proved

his claim in that case, but had refused to accept the offer to him of the stock in the reorganized company. He sued the latter company on his claim against the old insolvent company and was enjoined by the United States District Court of the Eastern District of Missouri from prosecuting that action. Reference is made to the opinion in that case for reasons and authorities in support of the validity and effectiveness of the proceeding and decree in the case against the St. Louis & San Francisco Railroad Company. St. Louis-San Francisco Railroad Co. v. McElvain (D. C.) 253 Fed. 123, 127, 132, 133, 134.

It is true that there was a judicial sale in that case, and that in the case in hand there has been no judicial sale; but it was not the judicial sale that made the decree and the title of the reorganized company in that case impervious to the attacks of the creditors of the old company. It was the offer to them in stock of the reorganized company of their fair and equitable shares in the benefits of the participation in that company. A like decree without the sale would have been equally conclusive. Witness the fact that the decrees and judicial sales in the Boyd Case and the Kansas City Southern Railway Company Case, without such offers to the unsecured creditors of equitable participation in the benefits of the reorganized corporation, were voidable by creditors, notwithstanding such judicial sales thereunder.

The final decree in the case of the St. Louis & San Francisco Railway Company was rendered on March 31, 1916, and the sale was confirmed on August 29, 1916. Foreclosure proceedings were then pending before Judge Hook against the Missouri Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company, and he rendered the final decrees therein on December 26, 1916. He followed the theory and plan disclosed in the St. Louis & San Francisco Railroad Company Case of requiring fair and timely offers to be made to the unsecured creditors in the form of stock, bonds, or other securities of the reorganized company before confirming the sales, found the offers of stock of the reorganized company to the unsecured creditors fair and equitable, confirmed the sale under the decrees, and delivered the property over to the reorganized company. Guaranty Trust Co. of New York v. Missouri Pacific Railway Co. (D. C.) 238 Fed. 812, 816. His rulings were challenged by appeals and affirmed by this court in an opinion filed on March 29, 1922. Walsh Tie & Timber Co. v. Missouri Pacific Railway Co., 280 Fed. 38.

In the Boyd Case, the Supreme Court, speaking of decrees of foreclosure sales of property of a railroad company to reorganized corporations wherein stockholders of the old company by agreement received, for their stocks, bonds or stock of the reorganized corporation, said:

But it is now settled that such reorganizations are not necessarily illegal, and, as proceedings to subject the property must usually be in a court where those who ask equity must do equity, such reorganizations may even have an effect more extensive than those made without judicial sale, and bind creditors who do not accept fair terms offered." 228 U. S. 503, 33 Sup. Ct. 560, 57 L. Ed. 931.

And after insisting that, when the property pursuant to agreement or decree is transferred to a reorganized corporation the unsecured

creditors were entitled to more valuable interests proportionately than the stockholders, it added:

"This conclusion does not, as claimed, require the impossible, and make it necessary to pay an unsecured creditor in cash as a condition of stockholders retaining an interest in the reorganized company. His interest can be preserved by the issuance, on equitable terms, of income bonds or preferred stock." 228 U. S. 508, 33 Sup. Ct. 561, 57 L. Ed. 931.

Mr. Phipps has been and still is offered the equivalent in the stock of the reorganized company of his just share of the property of the insolvent company. To sustain the contention of his counsel would result in his receiving the whole amount of his claim against the insolvent company and interest upon it in cash, while other creditors in his rank received only their just shares of the property in the stock of the reorganized company. The courts that administered and distributed that property had and still have the same jurisdiction and power to prevent so inequitable a result that they had to decree the equitable result effected by their action.

So it is that in the foreclosure cases which have been discussed the principle and practice have been adjudged sound and affirmed that it is just and equitable to permit and decree the transfer of the title of the property of a financially embarrassed railroad company, over the objections of some of its unsecured creditors, to a reorganized corporation in which equitable beneficial interests represented by the stock or bonds of the latter company are offered in place of their claims or stock and either accepted or rejected by creditors and stockholders, and by such a decree to foreclose and bar all creditors and stockholders of the insolvent company, whether they accept or reject such offers, from interfering with the property so transferred, and from maintaining any suit or claim against that property or the reorganized company on account of their claims against, or stock in, the prior insolvent corporation. The same principle and practice were and are equally applicable to suits of unsecured creditors and decrees on administration or creditors' bills to administer and distribute the property of insolvent railroad companies, and to the decrees of the United States District Court of the Northern District of Illinois and the ancillary decree in this case. After the foreclosure suits were brought and the courts had impounded the property, they held it in trust to administer and distribute it to the creditors and stockholders of the debtors in proportion to their respective equitable rights and interests therein. The United States District Courts that dealt with the property of the Chicago, Rock Island & Pacific Railroad Company held that property with the same powers, charged with the same duties, in trust for the same purposes, and they rendered in effect the same decrees.

That in the foreclosure cases the courts proceeded by sales, as we have seen, added nothing to the validity of or effect of their decrees, or of the title they transferred to the purchasers. That the courts in the foreclosure cases transferred the properties to new corporations, which the creditors and stockholders of the insolvent corporations, through their stocks and bonds of the new corporations which they

received for their equitable shares in the property of the old corporations, owned, possessed, controlled, and directed, while the courts in the case in hand delivered the property they administered back to the empty shell of the formerly insolvent corporation, so reorganized as to be solvent, which solvent corporation the creditors and the stockholders of the insolvent corporation owned, possessed, and controlled through the stock of that reorganized corporation, which they received for their equitable shares in the property of the insolvent corporation, is an immaterial difference. The courts in this case had the same power to vest in the reorganized solvent corporation the title to the property of the insolvent corporation free from the claims against and stock in the latter, and to bar actions and suits against the reorganized corporation and against the property they delivered to that corporation, that the courts in the foreclosure cases had and exercised to protect the new corporations and the property which they delivered to them against like claims. And the conclusion of the whole matter is that the decree of the United States District Court of the Northern District of Illinois, whereby that court adjudged that the property of the insolvent railway company should be delivered back to that corporation so reorganized as to be solvent without a sale, and that the unsecured creditors and stockholders of the insolvent company were enjoined and forever barred from interfering with or maintaining claims, actions, or suits against the property so delivered, or against the reorganized company, on account of such claims against or stock in the old insolvent corporation, in any other way than that specified in that decree, was far within the jurisdiction and power of that court, and was fair, equitable, and just.

The ancillary decree in the court below had the same effect in the Western District of Missouri that an original decree in that court to the same effect would have had there. That court's adjudications and injunctions were effective throughout the district, and that court had plenary jurisdiction on an application at the foot of the decree to cite Mr. Phipps and others in other divisions of the district to show cause in the division in which that decree was rendered why they should not be punished for contempt for a disregard of its provisions, and there to hear and adjudge the issues presented on the return to such a citation.

[4] The indebtedness of the garnishees levied upon under the execution of Mr. Phipps consisted of freight charges they owed the railway company, which it had earned within 90 days before the garnishment by the operation of the railway property and other property delivered to that company by the decrees of distribution. Counsel argue that these earnings were not a part of the property which the courts delivered back to the railway company under their final decrees, and which they enjoined all parties from interfering with, attaching, or in any manner whatsoever disturbing; but that is too narrow a construction of the decrees and injunctions. The railway company had no property just before the court delivered back to it the property it was distributing—it was nothing but the mere shell, nothing but the legal form, of a corporation, with no property in it, and the earnings

levied upon are undoubtedly the income of the property which those courts wrapped in and protected against attacks by their final decrees and injunctions and put into this empty shell. It cannot be truthfully said that levies upon and appropriations of all or any of the income of that property would not be interfering with and disturbing it, in violation of the injunctions and the decrees, and the result is that these earnings are equally protected by those injunctions with the body of the property itself.

[5] It is contended that Mr. Phipps was not within the jurisdiction of the court below, because he was not a party to the original creditors' suits, and consequently was not bound by the decrees. The position is untenable. He was one of the cestuis que trust of the District Court of the Northern District of Illinois, for whom it held all the property of the insolvent company; he was one of the unsecured creditors on whose behalf the creditors' suits were brought; and he filed and proved his claim as such under the decree. That court thus obtained plenary jurisdiction to hear, adjudicate, and dispose of his claim to any interest in or lien upon that property.

[6] Moreover, an application at the foot of a decree or a dependent suit may be maintained by the party to the original decree in a federal court, or by one who claims under such a decree against one who assails that decree, or any adjudication in it, in a subsequent suit or proceeding in a court with no appellate jurisdiction, on the ground that it is illegal or ineffectual, although the latter party was not a party to the original suit, the adjudication, or the decree. Julian v. Central Trust Co., 193 U. S. 93, 113, 24 Sup. Ct. 399, 48 L. Ed. 629; Virginia-Carolina Chemical Co. v. Home Insurance Co., 113 Fed. 1, 6, 51 C. C. A. 21; St. Louis-San Francisco Ry. Co. v. McElvain (D. C.) 253 Fed. 123, 129.

Let the decree below be affirmed.